No. 84-93

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

IN RE THE MARRIAGE OF

SHARON A. HICKEY,

        Petitioner and Respondent,

   and

ROBERT H. HICKEY,

        Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable J. M. Salansky, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry A. Wallace, Missoula, Montana

    For Respondent:

        Warden, Christiansen, Johnson & Berg; Stephen C.
Berg, Kalispell, Montana

_____

Submitted on Briefs:  July 19, 1984

Decided:  October 18, 1984

Filed: OCT 18 1984

_____
             Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Robert Hickey, appeals from an order of the District Court of the Eleventh Judicial District, Flathead County, in favor of his former wife, Sharon A. Hickey, granting custody of the minor children to respondent with reasonable rights of visitation remaining with the appellant, under the supervision of the Director of Family Court Services.

The parties were married on March 3, 1962. Five children were born of the marriage, two of whom were minors at the time of the trial, namely Kimberly Ann, born April 15, 1969 and Marie Ann, born July 7, 1976. On August 25, 1982, the wife petitioned for divorce. Sharon filed a motion for temporary custody of the three minor children, temporary child support, separate maintenance and a restraining order preventing Robert from contact with her except as necessary in exercise of child visitation rights. On September 17, 1982, the District Court heard the motion. The parties were awarded joint custody of Kimberly Ann and Tracy Lynn, who were granted their preferences as to their residences. Kimberly Ann resided with Robert from the date of the order September 21, 1983 until March, 1983. She then elected to change her residence to that of Sharon. Sharon was awarded temporary custody of the youngest child. Temporary child support and maintenance were ordered. The restaining order was granted. On September 29, 1983, the District Court issued its findings of fact and conclusions of law and final decree of dissolution. Robert was ordered to pay the sum of $110 per month for the support of each minor child. He was also ordered to pay respondent

-2-

maintenance in the sum of $100 per month. The court, upon the advice and recommendation of the Director of Family Court Services of the Eleventh Judicial District, ruled that the best interest of the parties' two minor children would be served by an award of custody to Sharon with reasonable rights of visitation to Robert under the supervision of the Director of Family Court Services. Sharon was awarded the right to occupy the family home.

On May 5, 1983, Sharon filed a motion in District Court to cite Robert for contempt for his failure to pay $160 in delinquent child support. At the time of the hearing, Robert was employed by Plum Creek Lumber Company, earning approximately $9.60 per hour with an annual salary of $16,000 per year. Sharon also moved for an order barring Robert from the family home and preventing him from bearing firearms. On the same day, Robert filed a motion to alter or amend the court's final decree based upon the amount of child support, child visitation and the possession of the family home. The court found that Robert had the ability to pay the maintenance and child support amounts and that Robert's willful delinquency constituted a contempt of the court. He was sentenced to serve ten days in the Flathead County Jail. The court further ordered that neither party shall bear or use firearms, knives or other weapons in the presence of the other party and neither have third parties assist them use such weapons. Appellant was restrained from entering the home of the parties except at times and dates mutually agreed to.

It is from the final judgment and consolidated order of the District Court which the husband appeals.

The issues raised on appeal are as follows:

(1) Whether the District Court abused its discretion in awarding custody of the minor children to respondent with reasonable rights of visitation remaining with appellant, under the supervision of the Director of Family Court Services.

(2) Whether the District Court erred by awarding respondent the exclusive right to occupy the family residence.

(3) Whether the District Court based the final decree upon marital misconduct.

It has been the policy of this Court to not disturb the findings and conclusions of the District Court if they are supported by substantial, credible evidence. Sarsfield v. Sarsfield (Mont. 1983), 671 P.2d 595, 40 St.Rep. 1736; Sawyer-Adecor Intern., Inc. v. Anglin (Mont. 1982), 646 P.2d 1194, 39 St.Rep. 1118.

Appellant's first issue for review goes to the adequacy of the District Court's findings concerning section 40-4-212, MCA which sets forth the relevant factors the court shall use to determine custody in accordance with the best interest of the child. Section 40-4-212, MCA provides:

> ". . . The court shall consider all relevant factors including:
>
> "(1) the wishes of the child's parent or parents as to his custody;
>
> "(2) the wishes of the child as to his custodian;
>
> "(3) the interaction of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
>
> "(4) the child's adjustment to his home, school and community; and

-4-

"(5) the mental and physical health of all individuals involved."

Appellant contends there were no findings regarding any of these factors. Nor were findings made regarding the wishes of the children as to custody as required by In Re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439.

We disagree. The holding in Kramer is limited only to those situations where the District Court has interviewed the children who are the subjects of the custody dispute. Neither of the two children were interviewed in this case. Nor was the District Court compelled to interview them by section 40-4-214, MCA, which provides in part, "the court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation . . . " We find the preferences of the children were considered. The youngest child, Marie, refused to see her father because she was aware of his violence and expressed much fear. The older daughter, Kim, terminated the joint custody arrangement upon her own volition and chose to reside with her mother. The trial court appointed an attorney for the minor children. The attorney actively participated in the hearings. We believe the children's interests were adequatedly represented. The court went to great lengths to justify the visitation rights of appellant under the supervision of the Director of Family Court Services. The court made extensive findings of appellant's current bitterness towards respondent and held that the best interest of the two minor children would be served by an award of their custody to respondent with reasonable rights of supervised visitation remaining with appellant.

Appellant submits that the District Court improperly

limited his visitation without a finding that reasonable visitation would seriously endanger the physical, mental, moral or emotional health of the children. In support of his contention, appellant cites this Court to Firman v. Firman (1980), 187 Mont. 465, 610 P.2d 178. In Firman, the District Court restricted the noncustodial father's right to visitation from three months to one month each summer. We reversed the District Court, holding that "no specific finding or conclusion was made that the existing arrangement seriously endangered the children's health." The statute in question as well as Firman, refer to the situation where the amount of visitation time is reduced. In the instant case, appellant's visitation time has not been reduced, it is merely to be exercised under the guidance and supervision of Family Court Services.

A central factor in the District Court's decision to permit visitation only under supervision, was that appellant possessed hostility and bitterness toward the marriage. Substantial, credible evidence suggested a potentially serious situation existed with respect to appellant's association with respondent and the parties' ability to arrange visitation. The District Court specifically found in its findings of fact and conclusions of law that:

> "During the period of separation, respondent [husband] has attended a series of counseling sessions as an aid in controlling aggressive tendencies which he has displayed during the period of separation. Various incidents involved respondent tearing out a telephone, throwing a beer keg, loading and brandishing a revolver, and assaulting a deputy sheriff. By observing respondent's demeanor at various court hearings, the court feels that some of this hostility remains. . ."

The record supports a modification of the custody decree. The husband's violent behavior interferes with an open-ended visitation arrangement and seriously endangers the physical, mental and emotional health of the children.

We will not interpret section 40-4-217, MCA, so narrowly as to prevent the trial court from overseeing the visitation arrangements between the parties who exhibit emotions of aggression, anger and violence. The parties' welfare and the moral, physical and emotional well-being of the two minor children must remain the primary consideration of the court. We hold the District Court did not abuse its discretion by awarding custody to respondent with reasonable rights of visitation remaining with appellant under the supervision of the Director of Family Court Services.

Appellant next challenges the District Court's determination of respondent's right to exclusively occupy the family residence. Appellant contends the District Court made no findings regarding the parties' financial needs, nor findings regarding respondent's contribution to the marital estate. We disagree.

In entering the decree in this case, the District Court made detailed findings of each parties' financial status. The court carefully weighed the parties' expenditures and past arrearages versus their projected income. The findings of fact and conclusions of law clearly reveal the District Court's consideration of section 40-4-202, MCA:

> "The parties had been married for 21 years . . . During the marriage the wife's primary obligation concerned the care and development of the parties' five children. The wife was unemployed during this period and developed no marketable

-7-

> employment skills . . . The husband is
> employed by Plum Creek Lumber Company for
> the past 11 years, earns approximately
> $9.70 per hour. . . the husband has
> medical, dental and optical insurance. .
> . The husband's opportunity for future
> acquisition of capital assets was greater
> than the wife's. . . "

Contrary to appellant's contention, the District Court did follow the policy established by this Court in Vert v. Vert (Mont. 1980), 613 P.2d 1020, 37 St.Rep. 1282. As stated in Vert, the trial court may not simply recite the factors listed in the statute, but rather, the trial court must apply these factors to the evidence presented. We find the trial court's apportionment of the property to be equitable.

The final issue appellant raises for review is whether the District Court based the final decree upon marital misconduct. Appellant lists several instances which he believes illustrates the trial court judge's intent to punish appellant for perceived marital misconduct. Appellant contends that the District Court's order which required him to pay child support was an abuse of discretion and that respondent had no legal right to receive child support because she was currently receiving Aid to Families with Dependent Children (ADC) Funds. However, what appellant fails to recognize is that he, as the father of his children, and not the State of Montana, has a legal obligation to support them. Section 40-5-221, MCA, provides in part, ". . . any payment of public assistance money made to or for the benefit of any dependant child or children creates a debt due and owing to the State of Montana by the responsible parent or parents in an amount equal to the amount of public assistance money so paid. . ." Also

section 53-4-248, MCA. This Court has long recognized the moral obligation of parents, particularly fathers, to support their children. Woolverton v. Woolverton (1976), 169 Mont. 490, 549 P.2d 458; State ex.rel. Lay v. District Court (1948), 122 Mont. 61, 198 P.2d 761; Refer v. Refer (1936), 102 Mont. 121, 56 P.2d 750. In Fitzgerald v. Fitzgerald (Mont. 1980), 618 P.2d 867, 37 St.Rep. 1350, this Court noted:

> "Respondent (husband) fails to take into account the well-settled principle that the law imposes upon civilized men--the duty to provide food and shelter arrangements for his own. It is one of the conditions upon which Adam was bounced out of the garden, and it has been the law ever since. Courts have an inherent jurisdiction to protect infants. They are wards of the government, and the courts are to protect their bread and butter. When doing so, they do not take their clue from Elijah and the ravens, but draw it from the earnings of the father. . . " 618 P.2d at 868, 37 St. Rep. at 1352.

We therefore hold, it is the legal as well as moral duty of appellant to support his minor children. Appellant is not absolved from this duty by public assistance provided to his children by a state agency.

Appellant's failure to pay the court-ordered child support resulted in a citation for contempt of court. The District Court in its contempt order stated: "There has been an overabundance of hostility in this case and in spite of advice and recommendations from the Court the parties continue a course of conduct that is highly aggressive, somewhat defiant and uncooperative. . ." We find such conduct on appellant's behalf an abuse of the District Court's dignity. Such defiance in a court of law will not be tolerated. The remaining instances wherein appellant

alleges the District Court sought to punish him for perceived martial misconduct must likewise be disposed of. We find no abuse of judicial discretion in the court's determination of child support and maintenance award. We affirm the District Court's judgment.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices