No. 86-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE MARRIAGE OF
BONNIE JOY REVIOUS,

        Petitioner and Respondent,

  and

ARLEY WAYNE REVIOUS,

        Respondent and Appellant.

_____

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Robert T. Cummins, Helena, Montana

    For Respondent:

        Peter Michael Meloy, Helena, Montana

_____

Submitted on Briefs:  Feb. 13, 1987

Decided:  April 6, 1987

Filed:  APR 6 - 1987

_____
               Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Arley Revious appeals from a February 19, 1986 order of the First Judicial District Court, Lewis and Clark County, that he pay $150 per month in child support for each of four children and $400 per month until January 1987 in maintenance. Arley also appeals from the District Court's order giving Bonnie authority to set reasonable visitation periods. We affirm.

The Reviouses were married on January 11, 1969. The marriage was dissolved by the First Judicial District Court by decree on July 31, 1984. At the hearing for dissolution the court reserved judgment on the issues of property distribution, custody, child support and maintenance. The court's findings and conclusions on these matters were issued on September 30, 1985. Because Arley filed objection to the findings, final judgment was not entered until February 27, 1986.

The Reviouses have four children, three boys and one girl, born in the years between 1970 through 1977. The dissolution decree of July 31, 1984 ordered that the children live with their mother, until a hearing on custody (and the other reserved issues) could be had. Arley was granted visitation every Friday night and Saturday as well as "at any and all times and places and not less than one evening a week."

The decree also ordered that Arley pay temporary child support of $100 per month per child. No temporary maintenance was awarded.

The final judgment of February 27, 1986 awarded joint custody to both parents, but gave Bonnie primary residential

custody. The children were permitted to live with the father "at such times and places as the parties may agree," but the decree provided that in the absence of agreement the mother was given discretion to determine visitation "on the basis of the best interests and reasonable desires of the children." The court ruled that a specific visitation schedule was unnecessary.

The District Court used the formula in Carlson v. Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419 to determine the amount of child support owed and concluded that $329 per child per month could be required. However, the court recognized that, in light of the actual state of Arley's finances, $329 per month per child was unreasonable, and ordered that $150 per month per child be paid until January 1, 1987, with an increase to $200 per month per child after January 1, 1987.

The January 1 date is key because Arley was ordered to pay Bonnie $400 month maintenance retroactive to August 1, 1984. These payments were to end January 1, 1987 when Bonnie was to have completed academic training as a paralegal.

At the time of the final hearing, Bonnie was earning approximately $3,500 per year as a bus driver and Arley was earning approximately $37,000 a year as a Montana National Guard officer. The District Court found that Bonnie and the four children's cost of living was about $1,800 per month. She received $127 each month in food stamps and had borrowed $2,300 from her parents to pay off bills incurred while married. Her job as a school bus driver (taken while attending school and raising the children) netted about $380 per month. She also was receiving temporary support from Arley of $400, making her total monthly income about $780. Arley's cost of living was found to be $1,200 per month,

excluding the $1,000 house payment and $400 per month paid as child support.

There is essentially no marital estate in real or personal property, and it is clear that the Revious' liabilities equal or exceed their assets.

Issues

Arley raises three contentions on appeal. First, he argues that the District Court erred by not ordering a specific visitation schedule. Second, he believes the District Court erred in setting the amounts to be paid for child support and maintenance. Finally, he contends that the District Court erred when it made the increase in child support and maintenance retroactive to the date of dissolution.

Visitation

The original action in this matter, the petition for dissolution granted July 26, 1984, gave Bonnie temporary custody of the children and granted Arley "reasonable" visitation privileges. The order was not specific in establishing visitation other than to provide visitation for Arley at least one evening every other week and on Friday nights and Saturdays. Arley objected to this system of visitation, so the District Court, by order on August 31, 1984 granted Arley visitation "at any and all times and places and not less than one evening during the week" and on Friday nights and Saturday every week. The August order also contained a warning to each party that they not denigrate each other in front of the children. Arley had accused Bonnie of turning the children against him.

On September 13, 1984, after Bonnie and the children moved from Helena to Great Falls, the parties stipulated that Arley would have visitation every other weekend.

On September 30, 1985, the District Court issued its findings of fact and conclusions of law. The court affirmed its order of joint custody but gave primary residential custody to Bonnie:

> It should therefore be ordered that the residency of the children will be primarily with the mother, that the children shall be permitted to reside with the father at such times and places as the parties may agree, but that in the absence of agreement the mother may determine on the basis of the best interests and reasonable desires of the children. The Court should treat as contempt and punish therefore any attempt by either party to alienate the children from the other party, by residential requirements or demands, or otherwise.
>
> B. Joint custody being indicated . . . no visitation need be decreed (40-4-217(I)), and it is not in the best interests of the children that it be so decreed.

Arley argues that it was error for the court not to order specific visitation. The court was well aware, he asserts, of his claim that visitation with the children had not been satisfactory, and that Bonnie was intimidating the children into not visiting him.

This Court has long followed the rule that unless the findings of fact are clearly erroneous, the District Court's decision will not be overturned on appeal. The appealing party must show, by clear error, that the record does not support the judgment of the District Court. In re the Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 42 St.Rep. 623 and Carlson v. Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419.

Arley presented no evidence that Bonnie was refusing to cooperate in arranging visitation. Although it is clear from the record that most of the children were not interested in visiting their father, nothing indicates that their mother

has done anything to discourage them from visiting with him. In fact, the record indicates that Arley made only feeble attempts to stay in touch with them, visiting irregularly and phoning only once every two weeks.

Arley's arguments fail to overcome the presumption that the District Court's order is correct. The District Court believed that joint custody was sufficient to insure visitation, and concluded that the best interests of the children would not be met by establishing a fixed visitation schedule. Based on the evidence presented, we are not justified in substituting our discretion for that of the trial court.

## Child Support and Maintenance

Arley next argues that the District Court erred in setting the amounts to be paid for child support and maintenance. The amount of child support awarded was $150 per child per month until January 1, 1987, with an automatic increase to $200 per month per child after January 1. Arley was also ordered to pay Bonnie $400 per month maintenance until January 1, 1987. The increase in child support and the award of maintenance were made retroactive to August 1, 1984. Arley claims these awards were unjust because they failed to adequately consider his personal financial crisis.

The District Court made the following findings regarding the financial status of each of the parties. First, it noted that after 15 years of marriage the Reviouses had essentially no marital estate. Second, it noted that the family had seriously overspent their means, causing the family's liabilities to exceed their assets. Third, Bonnie's gross income as a busdriver in 1985 was $3,500. The living expenses for her and the children were approximately $1,800 a month. Fourth, Arley was earning a gross income of $37,000 a year as a Montana National Guard Officer. His living

expenses, including child support payments of $400/month and house payments of $1000/month, were $2,670. Finally, Bonnie was moving toward financial independence by planning to complete a 2 year paralegal program in Great Falls and find employment by January 1, 1987.

The District Court applied the formula we adopted in Carlson v. Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419 to determine the amount of child support each parent should pay. Under the terms of the formula, the District Court determined that Arley would be required to make a monthly contribution of $1,316 to support the children. This translated to $329 per month for each child. The Court did not hold Arley responsible for the whole amount, however, reasoning that the amount was unreasonable in light of Arley's financial bind. Hence, the court concluded that Arley should pay $150 per month per child during the period of maintenance and $200 per month per child when his maintenance obligation ended.

Arley raises two objections to the use of the formula by the District Court. First, he complains that the court should have used his net income, rather than his gross income when applying the formula. Second, he asserts that the District Court erred in not taking into consideration his expenses as part of the formula.

The logic of the Carlson formula is that the financial needs of the children are paid in proportion to the parent's earning capacity. The purpose of the formula is to provide a guideline to apportion the amount of child support each parent must pay. In determining the amount Arley Revious should pay, the District Court used the Carlson guideline, but used gross, rather than net income as a factor in the formula. Although we did not specify net income was the factor to be applied to the Carlson formula, we later ruled

in Hansen v. Jurgens (Mont. 1986), 722 P.2d 1151, 43 St.Rep. 1316 that the amount used in the formula should be a net amount. Nonetheless, in the instant case we find no abuse of discretion, because even if the court had applied the net income figure, the required child support would be approximately $280 per child per month. Therefore, the $150 and $200 a month figures established by the District Court are substantially less than what the Carlson formula could oblige Arley to pay. Hence although the District Court erred in its technical application of the Carlson guidelines, the error was harmless. The District Court's award of child support was reasonable.

Arley's second contention, that the District Court should have considered his expenses in applying the formula, is without support. It is obvious from even a cursory review of Carlson that the parents' monthly expenses are not part of the formula. The formula is designed to insure that the children are supported by both the parents in proportion to the parents' earning capacity. It is a guideline. Here, the District Court followed the guidelines, and even though Arley's debt wasn't a factor in the formula, tempered its judgment by considering Arley's poor financial condition, stating "in view of the actual state of the husband's finances . . [$329 per month per child] would be an unreasonable amount for child support." Hence, Arley's second claim is meritless, as the court recognized his debts and expenses, even though the guidelines of Carlson did not contain such a requirement.

Arley's complaint about maintenance is on a parallel track with his complaints on child support. He believes the District Court did not adequately consider his ability to pay. We disagree.

- 8 -

The District Court made the following findings of fact in concluding that Bonnie should be awarded maintenance:

5. At the time the petition in this action was filed, the husband was thirty-six years old and the wife was thirty-seven. Both were twenty-one when they were married in 1969 and both were high school graduates. During the first year of the marriage the wife worked as a key punch operator, and during the last year of the marriage she worked in her father's real estate office. Except for these two years she worked in the home as a full time housewife and parent throughout the course of the marriage and acquired no saleable occupational skills. Commencing in August of 1984, the wife entered para-legal training at College of Great Falls, scheduled to be completed in the summer of 1986, and she expects to be fully employed as a para-legal within six months thereafter. The husband entered full-time active duty with the National Guard in the second year of the marriage and served as such for the remainder of the marriage. For the first seven years of his active duty he was a recruiter and was "on the road" at least half the time. He is a captain with 14 years of service and is in good standing. The wife has received no assets from the marital estate which could be converted to cash or generate income. In addition to support for the children, the wife will require a minimum of $400 per month to support herself and her education program until such time as she becomes fully employed.

The trial court is authorized under § 40-4-203, MCA, to grant maintenance if it finds that spouse seeking maintenance:

(1) (a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment or is the custodian of the child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Among the criteria for awarding maintenance, the trial court shall consider:

(2) (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during marriage;

(d) the duration of the marriage;

(e) the age and physical and emotional status of the spouse seeking maintenance; and,

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203, MCA.

It is clear from the finding of fact set out above that the District Court examined each of the statutory elements before deciding to award maintenance. Arley presents no evidence indicating the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. In re Marriage of Laster (Mont. 1982), 643 P.2d 597. The record clearly supports the order of the District Court.

As his final issue, Arley complains that the final order awarding child support and maintenance should not have been made retroactive to the date of dissolution. Arley asserts that Bonnie and the children "physically and economically lived" on the court ordered temporary child support of $400 a month "without any apparent adverse effect or imperative need." This claim, as well as Arley's assertion that he should be given custody if Bonnie couldn't raise four

- 10 -

children on $400 a month, shows that Arley is not cognizant of the financial realities of child-rearing. Arley's inadequacies as manager of his own finances evidence this. He claims he's going bankrupt on a salary of $37,00 a year, yet at the same time expects Bonnie to raise the four children on an annual income of $8,600 ($3,800 salary and $400 month child support.)

After moving to Great Falls with the children, Bonnie attended school full time and worked as a bus driver. To make ends meet she became a food stamp recipient and borrowed from her parents. Arley's assertion that Bonnie's existence on social programs and parental charity evidenced no "imperative need" shatters the credibility of his claims that he is suffering financial hardship.

It was clearly within the District Court's authority to make the maintenance and child support awards retroactive. The temporary order of child support issued in July of 1984 did not prejudice the rights of the parties or the children adjudicated at the later hearings. Section 40-4-121(7)(a), MCA. It was well within the District Court's power, after hearing on the matter of child support and maintenance, to make the order retroactive. We see no abuse of discretion.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-