No. 87-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA, by and through
the DEPARTMENT OF REVENUE, ex rel.,
TAMMY J. SORENSEN, an adult and
JASON RICHARD SORENSEN, a Child,

        Petitioners and Respondents,

-vs-

RICHARD M. ROSKE,

        Respondent and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Mayo Ashley, Helena, Montana

    For Respondent:

        Nina Vaznelis, Helena, Montana
        Kelly O'Sullivan, Child Support Enforcement Program,
        Helena, Montana

                    Submitted on Briefs:  Sept. 3, 1987

                          Decided: November 10, 1987

Filed: NOV 10 1987

_____
Ethel M. Harrison
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This dispute concerns the assessment of costs and support in an action to establish paternity. Appellant Roske challenges the District Court's award of $486.50 per month in child support, and the District Court's award of guardian ad litem fees. Roske also challenges the lower court's visitation provisions. We affirm.

The order of the District Court of the First Judicial District dated November 17, 1986, settled the rights and obligations of Roske, the father, and Sorenson, the mother, in regard to the parties' child. Prior to the order Roske (1) had not visited with or had contact with the child, (2) paid no expenses incident to the pregnancy of Sorenson and her period of confinement, and (3) paid no support for the child.

The parties established a relationship in 1983 when Roske's job brought him to Helena to work on a temporary basis. Roske resides with his wife and their two children near Missoula, but the work in the Helena area brought him in contact with Sorenson regularly from 1983 to 1984. Sometime in the fall of 1984 Sorenson became pregnant. She informed Roske, and in March of 1985 they broke off the relationship.

Until February of 1985 Sorenson worked as a nurses aid. Health problems resulted from the pregnancy however, and in February of 1985 she heeded the advice of her Doctor and quit her job. To support herself she applied for and received income from the Aid to Families with Dependent Children program. The State brought this action to establish Roske's liability for support of the child.

In response to the State's petition, Roske denied paternity. The parties submitted to blood testing and the

results showed that there was a 99.14 percent probability that Roske fathered the child. Following the testing the District Court held a pretrial conference and recommended that Roske acknowledge paternity. Roske refused, and a trial followed. The District Court's order is based on trial testimony and documentary evidence submitted by the parties.

Roske presents the following issues for review:

(1) Did the lower court rely on the proper guidelines in arriving at a figure for support, and is that figure excessive?

(2) Did the lower court abuse its discretion by assessing guardian ad litem fees against appellant under the court's inherent equity powers, and as a sanction under Rule 11, M.R.Civ.P.?

(3) Did the lower court abuse its discretion by attaching conditions to appellant's visitation?

ISSUE 1: Roske claims that the lower court's support award of $486.50 per month is excessive. Roske also claims that under the Carlson formula, his support obligation totals only $346.74.

The legislature has decided the proper guidelines for determining the amount of support in a paternity action. See § 40-6-116(5), MCA. The statute requires the District Court to consider:

> (a) the needs of the child;
> (b) the standard of living and circumstances of the parents;
> (c) the relative financial means of the parents;
> (d) the earning ability of the parents;
> (e) the need and capacity of the child for education, including higher education;
> (f) the age of the child;
> (g) the financial resources and the earning ability of the child
> (h) the responsibility of the parents for the support of others; and

3

(i) the value of services contributed by the custodial parent.

The District Court's findings adequately address the statutory criteria set out above. For example, in regard to subsection (a), the lower court found that the child lacked many things that other children take for granted, and that the mother set the monthly needs of the child at $725, and that the father set the monthly needs of the child at $436.50. In regard to subsections (b), (c), (d), and (h), the lower court found that the mother has been an indigent, that she is currently enrolled in Carroll College's nursing program, that she plans to support herself and her educational pursuits with grants, student loans, and work study income, and that currently her earning ability is somewhere in the range of $4.00 per hour. In regard to the father on subsections (b), (c), (d), and (h), the lower court found that the father is employed as a master plumber and supervisor, that his income exceeds the monthly needs of his family in Missoula by $1038, and that he has many assets including; real property in the Missoula area, an $18,000 travel trailer, an $89,000 pension fund, and polo horses.

We will not overturn a support award absent a clear abuse of discretion resulting in substantial injustice. In re the Marriage of Jacobson (Mont. 1987), __ P.2d __, __, 44 St.Rep. 1678, 1680. Substantial evidence from the record supports the lower court's findings. Thus, the District Court acted within the discretion afforded by § 40-6-116(5), MCA, and we will not disturb its award of support.

In regard to Roske's contentions on the application of the Carlson formula, at trial Roske admitted that his own estimate of $436.50 for the child's monthly needs failed to provide an adequate amount for recreation and other expenses. Nevertheless, he contends on appeal that the lower court

4

erred because under the Carlson formula his obligation should total only $346.74.

The Carlson formula serves as a guideline for arriving at a fair allocation of support between husband and wife in an action brought under § 40-4-204, MCA. The considerations for arriving at a support award in a paternity action as set out in § 40-6-116, MCA, vary slightly from the factors contained in § 40-4-204, MCA. However, both statutes emphasize earning capacity as a yardstick for arriving at an equitable allocation of the child's expenses. Thus, a district court could apply the formula and remain within the bounds of discretion provided by § 40-6-116(5), MCA.

In this case, we hold that the District Court did not abuse its discretion by failing to follow the formula. The equation from Carlson "is a guideline, and not mandatory." [Emphasis in original.] Jacobson, 44 St.Rep. 1678, 1681. And, as with support awarded pursuant to § 40-4-204, MCA, the lower court may "fashion support orders to fit the exigencies of the case." Jacobson, 44 St.Rep. at 1681. At any rate, as Roske concedes in his brief, if the child's needs totaled $725 per month as contended by Sorenson, the Carlson formula would render a support obligation for Roske which exceeds the current obligation of $486.50. Given this calculation, and Roske's admission that his needs figure was low, the District Court acted within its discretion by refusing to employ Roske's needs figure to calculate a lower support award under the Carlson formula.

ISSUE 2: Roske contends that the lower court erred by assessing guardian ad litem fees against him because the child did not need an attorney. Roske also contends that Rule 11, M.R.Civ.P., cannot be used to impose the fees as a sanction. Sorenson responds that the fee assessment is justified under Rule 11, and under the lower court's inherent

5

equity powers. See In re the Marriage of Hereford (Mont. 1986), 723 P.2d 960, 43 St.Rep. 1508. We will not disturb the District Court's conclusion in regard to the fees if it is correct on either theory. Norwest Bank Billings v. Murnion (Mont. 1984), 684 P.2d 1067, 1071, 41 St.Rep. 1132, 1136.

In this case, the fees are justified under Rule 11, M.R.Civ.P., because the record supports the lower court's finding that Roske's claims and defenses were made in bad faith. After the blood test showed a 99.14 percent probability that Roske fathered the child, the parties filed a pretrial order. In the order Roske denied paternity. At trial Roske admitted that he believed he fathered the child, but stated that he continued to resist legal acknowledgement of paternity to gain leverage on the support issue. At trial Roske also admitted that he undervalued property in his financial declaration, and that he underestimated the child's needs in his needs statement.

Rule 11 of the Montana Rules of Civil Procedure may be employed to assess costs against a party who needlessly delays the court's decision by bad faith pleading. Attorney fees are mentioned in Rule 11 as one of the costs which may be assessed. According to the Federal commentators, the rule is designed to force pleaders to make a reasonable inquiry into the truth of a statement made in a paper filed with the court. Fed. R. Civ. P. 11 advisory committee note. The standard used to judge the inquiry is reasonableness under the circumstances. Fed. R. Civ. P. 11 advisory committee note. In this action, Roske's bad faith paternity defense and low property valuations were contained in papers filed with the court. His own testimony shows that he did not have a reasonable belief that the allegations were true. Therefore, the District Court acted within its discretion by

finding that Roske violated Rule 11, M.R.Civ.P. Since this finding sufficiently supports the award, we will not consider whether the rationale for fees from Hereford is applicable to this case.

Roske also claims that the child had no need of representation, and therefore he should not have to pay the fees. Section 40-6-110, MCA, requires representation of children under the age of majority in a paternity action. Thus, the lower court's decision to provide an attorney fulfills the statutory mandate, and Roske's argument lacks merit.

ISSUE 3: This Court has held that the district court in a paternity action should be guided by the child's best interest when decreeing visitation rights. Schuman v. Bestrom (Mont. 1985), 693 P.2d 536, 539, 42 St.Rep. 52, 58. In this case, the District Court found that Roske was a complete stranger to the child, but that visitation with Roske was in the child's best interest if the visitation was subject to reasonable limitations on time, place, and persons present as may be set by Sorenson until a parental relationship is established between the child and the father. Roske claims that this finding gives Sorenson too much control over visitation. Roske also claims that the finding restricts visitation and thus violates § 40-4-217, MCA, because no showing that the restriction is necessary to protect the child's physical, mental, moral or emotional health has been made.

First, in regard to whether or not § 40-4-217, MCA, requires a showing of endangerment, this Court has distinguished between reduction of visitation and supervision of visitation. See In re the Marriage of Hickey (Mont. 1986), 689 P.2d 1222, 1225, 41 St.Rep. 1931, 1935; Jacobson, 44 St. Rep. at 1681. In this case, as in Hickey and

7

Jacobson, we will not interpret § 40-4-217, MCA, so narrowly that the District Court is unable to fashion visitation provisions reflecting the child's best interest. Thus, the District Court's decision to require that Roske establish a relationship with the child before beginning more liberal visitation does not violate § 40-4-217, MCA.

Roske contends that the District Court, rather than Sorenson, should decide the reasonable times, places, and persons present for visitation. The order in this case requires Sorenson to reasonably arrange visitation. In the absence of a showing that Sorenson is likely to unreasonably limit visitation, we find no clear error, and the lower court must be affirmed. See In re the Marriage of Revious (1987), 735 P.2d 303, 305, 44 St.Rep. 674, 676.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8