No. 94-329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

TAMARA KAY NJOS, formerly
known as Tamara Kay Allard,

      Plaintiff and Respondent,

  and

ROBERT DALE ALLARD

      Respondent and Appellant.

FILED

FEB 15 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Edmund F. Sheehy, Jr.; Cannon & Sheehy,
          Helena, Montana

      For Respondent:

          John L. Hollow, Attorney at Law, Helena,
          Montana

Submitted on Briefs:   December 8, 1994

Decided:   February 15, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court

Robert Dale Allard (Robert) appeals from orders of the First Judicial District Court, Lewis and Clark County, temporarily modifying his visitation rights with his daughter and requiring him to undergo a sex offender evaluation. We affirm.

Robert married Tamara Njos (Tamara) in 1982. Their marriage was dissolved by a North Dakota court in 1987 and Tamara was awarded sole custody of the couple's two minor children: a son, Dustin Allard, born February 4, 1983, and a daughter, Bobbi Allard, born September 30, 1986. Robert was granted weekly and alternating holiday visitation.

The decree was modified in 1988 to provide for visitation by Robert every other weekend, one full month in the summer, and scheduled holidays determined by court order. The North Dakota court allowed Tamara to move to Montana with the children in 1989, and again modified Robert's visitation to provide for two months of summer visitation and alternating Christmas and spring vacations.

On March 16, 1994, Tamara filed a petition in the First Judicial District Court seeking recognition of the North Dakota dissolution decree. Seven days later, she moved to modify visitation, to object to visitation pursuant to § 40-4-217(6), MCA, and for an ex parte order, under § 40-4-220(2)(a)(ii), MCA, requiring that Robert's visitation with his daughter Bobbi be supervised. Tamara supported the motion with her own affidavit; counseling notes pertaining to alleged sexual assaults by Robert

2

against Tamara's sister, Tracy; transcripts of sworn testimony from two women who allegedly had been sexually assaulted by Robert while he was a junior high school teacher in the 1980s; and a copy of the criminal complaint arising out of the incidents with Robert's students. The District Court issued an ex parte order temporarily modifying Robert's visitation rights by requiring supervised visitation with Bobbi.

The parties subsequently appeared before the District Court for a show cause hearing. Tracy Njos testified that, unbeknownst to her sister Tamara, Robert had sexually assaulted her on various occasions between 1984 and 1985, when she 14 to 15 years old. When the hearing continued several weeks later, Tamara's other sister, Cindy Hayden, testified that Robert had sexually assaulted her in 1985, when she was 12 years old. Tamara, Robert, and Robert's mother, Linda Allard, also testified, as did Ron Silvers (Silvers), a licensed therapist specializing in the psychological treatment of sexual assault offenders and victims. Following the hearing, the District Court ordered that the temporary modification of Robert's visitation rights continue and that he undergo a sex offender evaluation. Robert appeals from the District Court's ex parte and post-hearing orders

1. Did the District Court err by proceeding under 40-4-220, MCA, rather than § 40-4-217(3), MCA, in ruling on the motion for temporary supervised visitation?

The District Court predicated its ex parte order modifying Robert's visitation on § 40-4-220(2)(a), MCA, which provides for temporary modification of custody ex parte when the moving party

3

shows by affidavit that the child's physical or emotional health **is** endangered and an immediate change would protect the child's physical or emotional health. Robert asserts that § 40-4-217, MCA, applies and that the court was not authorized to proceed pursuant to § 40-4-220, MCA. We review a district court's legal determinations to ascertain whether they are correct. In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93.

We address first the underlying question of whether § 40-4-220(2), MCA, which refers by its plain language to an ex parte request for temporary "custody" or modification thereof, is applicable to Tamara's ex parte request for temporary modification of "visitation." We previously have determined that visitation is an inherent part of child custody and that the district courts have broad powers to determine all problems concerning custody and visitation. In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723 (citation omitted). Under that rationale, and given our primary responsibility of focusing on the well-being of the children (see In re Marriage of Hickey (1984), 213 Mont. 38, 44, 689 P.2d 1222, 1225), it is clear that the statutorily-authorized ex parte practice regarding a temporary custody request must necessarily extend to ex parte practice regarding temporary visitation issues. A contrary determination would prevent a district court from acting expeditiously and on a temporary basis, in appropriate cases, to protect the interests of minor children whose physical or emotional health may be at risk.

In this case, Tamara's ex parte request for temporary

4

modification of Robert's visitation was supported by materials sufficient to raise the issue of whether Bobbi's visitation environment with Robert might endanger her physical or emotional health. We conclude that § 40-4-220(2), MCA, authorizes a district court to address ex parte requests for temporary modifications of visitation arrangements, as well as requests for temporary custody or modification thereof.

Robert argues that the court's temporary order for supervised visitation in this case constitutes a "restriction" on his visitation rights pursuant to § 40-4-217(3), MCA. On that basis, he asserts that compliance with the procedural requisites of § 40-4-217, MCA, was necessary before the District Court could order supervised visitation with Bobbi.

Section 40-4-217(1), MCA, provides that a noncustodial parent is entitled to reasonable visitation rights unless, after a hearing, the court finds that visitation would seriously endanger the child's physical, mental, moral or emotional health. Section 40-4-217(3), MCA, specifically provides that visitation cannot be restricted absent such a serious endangerment finding by the court.

Robert relies on a Commissioners' Note to § 40-4-217, MCA, in asserting that he is entitled to a hearing and a serious endangerment finding prior to entry of an order "restricting" his visitation to supervised visitation. The Note states that a court cannot deprive the noncustodial parent of all visitation rights without meeting the hearing and serious endangerment standards of the statute. Neither the language of the Note nor our case law

interpreting § 40-4-217, MCA, support Robert's position.

The Note clearly states that the hearing and serious endangerment requirements of § 40-4-217, MCA, apply where a court "deprive[s] the noncustodial parent of all visitation rights." Here, the court did not totally deprive Robert of his visitation rights. Indeed, it did not reduce Robert's visitation time in any way. The court simply, and temporarily, required that Robert's visitation with Bobbi be supervised.

Moreover, we previously have rejected a similar argument attempting to impose the requirements of § 40-4-217, MCA, on an order for supervised visitation. In Marriage of Hickev, 689 P.2d 1222, the father appealed from an order granting custody of the children to the mother and providing him with reasonable and supervised visitation. Relying on Firman v. Firman (1980), 187 Mont. 465, 610 P.2d 178, Hickey argued that the limitation of his visitation rights was erroneous absent a finding that unrestricted visitation would seriously endanger the physical or emotional health of the child as set forth in § 40-4-217, MCA. We concluded that Firman was distinguishable in that both the statute and that case referred to a reduction in the amount of visitation **time** granted, whereas Hickey's visitation time was merely to be supervised. Marriage of Hickev, 689 P.2d at 1225.

We reach the same conclusion here. Section 40-4-217, MCA, applies when visitation time is reduced or, as indicated in the Commissioners' Note, totally eliminated. A requirement that visitation be supervised is not a restriction of visitation rights

6

under § 40-4-217(3), MCA.

Robert argues in this regard that our recent decisions in Romo v. Hickok (Mont. 1994), 871 P.2d 894, 51 St.Rep. 320, and In re Marriage of Reininghaus (1991), 250 Mont. 86, 817 P.2d 1159, support the opposite conclusion; namely, that supervised visitation is a restriction of visitation rights under § 40-4-217, MCA, which requires a serious endangerment finding. While language in those decisions may have inadvertently clouded the question, neither reached a conclusion different from Marriage of Hickey.

As discussed above, we concluded in Marriage of Hickey that either a reduction in the amount of **time** for visitation or a total elimination of visitation constituted a "restriction" bringing § 40-4-217, MCA, into play. Marriage of Hickey, 689 P.2d at 1225. We did not deviate in any way from that conclusion through 1987, when we reiterated affirmatively in State ex rel. Sorenson v. Roske (1987), 229 Mont. 151, 156-157, 745 P.2d 365, 369, the distinction between reduction in visitation and supervision of visitation vis-a-vis § 40-4-217, MCA. St. ex rel. Sorenson, 745 P.2d at 369; citing Marriage of Hickey, 689 P.2d at 1225 and In re Marriage of Jacobson (1987), 228 Mont. 458, 463, 743 P.2d 1025, 1027.

We decided Marriage of Reininshaus in 1991. There, the mother was granted sole custody of the minor children and the father was awarded reasonable visitation. The father argued on appeal that the district court's order for supervised visitation was not supported by a serious endangerment finding as required by § 40-4-217, MCA. We noted factually that the district court had not

7

ordered supervised visitation, but had ordered reasonable visitation. We stated--in passing and without explanation--that § 40-4-217(1), MCA, which refers to a noncustodial parent's right to reasonable visitation, "requires a showing of endangerment." Marriage of Reininshaus, 817 P.2d at 1161. We did not analyze, interpret or apply the § 40-4-217(3), MCA, "restriction" language argued by Robert here.

In Romo, decided in 1994, the district court ordered supervised visitation upon release from prison of an incarcerated father. The father's parents argued that his visitation should not be restricted. Citing to the Commissioners' Note to § 40-4-217, MCA, we stated that "[t]he proper standard to apply where the custodial parent seeks restriction of the noncustodial parent's visitation is the serious endangerment standard." Romo, 871 P.2d at 896. We did not define "restriction" as utilized in the statute in any way; as a result, we certainly did not revise the interpretation of "restriction" set forth in Marriage of Hickey and continued thereafter. See Marriage of Hickey, 689 P.2d at 1225; Marriage of Sorenson, 745 P.2d at 369.

We conclude again that a requirement for supervised visitation is not a "restriction" of visitation rights under § 40-4-217(3), MCA, which imposes upon a district court the hearing and serious endangerment requirements of § 40-4-217, MCA. We hold, therefore, that the District Court did not err in proceeding pursuant to § 40-4-220(2), MCA, rather than § 40-4-217(3), MCA, on Tamara's motion for temporary supervised visitation.

8

2. Did the District Court abuse its discretion by continuing the order to supervise visitation following the show cause hearing?

Robert next argues that, under the circumstances, the continuing order requiring supervised visitation was an abuse of the District Court's discretion. This Court's standard of review for custody and visitation is whether substantial credible evidence supports the District Court's judgment. Marriage of Hunt, 870 P.2d at 723. We will overturn a court's custody or visitation decision only when the court's findings and conclusions clearly demonstrate an abuse of discretion. Marriage of Hunt, 870 P.2d at 723.

During the show cause hearing, Tracy Njos testified that Robert had assaulted and forced her to have intercourse with him when she was 14 years old. Cindy Hayden, another younger sister of Tamara's, also testified that Robert had sexually assaulted her at age 12.

Based on this and other testimony at the show cause hearing, the District Court determined that a question existed as to whether Robert "poses a risk to the children during their visitation." It is clear that substantial evidence supports the court's determination. We hold, therefore, that the District Court did not abuse its discretion in continuing the temporary order requiring supervised visitation following the show cause hearing.

3. Did the District Court abuse its discretion in requiring Robert to undergo a sex offender evaluation?

Robert's final contention is that the District Court abused

its discretion in ordering him to undergo a sex offender evaluation. We review a district court's discretionary ruling to determine whether the court abused its discretion. In re Marriage of Bonamarte (1994), 263 Mont. 170, 172, 866 P.2d 1132, 1133 (citation omitted).

Robert does not challenge the court's authority to order the evaluation under § 40-4-215, MCA. He argues that ordering the evaluation was an abuse of the court's discretion because the results would not constitute relevant and admissible evidence.

Relevant evidence assists in establishing the existence of any fact which is of consequence to resolution of the action. Rule 401, M.R.Evid. The determination of the admissibility of evidence is within the discretion of the trial court; the court is not guided by fixed rules, but must consider the nature of the evidence and the circumstances of a particular case. In re Marriage of Starks (1993), 259 Mont. 138, 145, 855 P.2d 527, 531-532.

In essence, Robert's argument requests evidentiary rulings regarding sex offender evaluation results which do not yet exist. For the most part, the relevance and admissibility of this evidence cannot be determined by any court until the evaluation is performed.

Robert is correct, however, with regard to the admissibility of one aspect of the as-yet-unperformed sex offender evaluation. Relying on State v. Staat (1991), 248 Mont. 291, 811 P.2d 1261, he argues that the results of any polygraph examination performed as part of the sex offender evaluation are inadmissible. In Staat,

10

which involved use of the results of a court-ordered polygraph examination in revoking an appeal bond, we quoted § 37-62-302, MCA, which prohibits the introduction or admission of polygraph results as evidence in a court of law. Staat, 811 P.2d at 1261. We went on to state as a rule of law that "[p]olygraph evidence shall not be allowed in any proceeding in a court of law in Montana." Staat, 811 P.2d at 1262. We quoted and applied that rule of law in State v. Hensley (1991), 250 Mont. 478, 483, 821 P.2d 1029, 1032, in reversing a district court's consideration of polygraph results in sentencing a criminal defendant.

Here, we apply the Staat rule in a proceeding involving custody and visitation of children. We conclude that the results of any polygraph examination performed during the court-ordered sex offender evaluation are not, and will not be, admissible evidence in subsequent proceedings in this action.

Robert also argues that the District Court, having refused to consider Silvers' testimony recommending the sex offender evaluation because Silvers was not properly qualified as an expert, abused its discretion by ordering the evaluation. He cites no authority requiring expert testimony before a court can order a sex offender evaluation or any other investigation or report authorized by § 40-4-215, MCA. Moreover, the testimony presented at the hearing from persons other than Silvers clearly alerted the court to the potential risk Robert posed to his minor daughter. We conclude, therefore, that the District Court did not abuse its discretion in ordering Robert to undergo a sex offender evaluation.

11

Affirmed.

_Karla M. Gray_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_William E. Hunt_

_[signature]_

_Terry Trieweiler_
Justices

February 15, 199.5

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Edmund F. Sheehy, Jr.
Cannon & Sheehy
P.O. Box 5717
Helena, MT 59604-5717

John L. Hollow
Attorney At Law
318 East Sixth Avenue
Helena MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy