No.  92-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

JAMES S. SPENCE,

     Petitioner and Appellant,

  and

BARBARA L. SPENCE,

     Respondent and Cross-Appellant.

FILED

MAR -4 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Christopher Daly, Attorney at Law,
        Missoula, Montana

    For Respondent:

        Gail M. Haviland, Worden, Thane
        & Haines, Missoula, Montana


           Submitted on Briefs:  December 3, 1992

                  Decided:  March 4, 1993

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant James S. Spence appeals from an order of the Fourth Judicial District Court, Missoula County, distributing certain pension benefits, proceeds from out-of-state property, and an award of maintenance. Respondent Barbara L. Spence cross-appeals the order, alleging the court erred in its distribution of the marital estate and erred in failing to award her attorney fees and costs.

We affirm in part and remand.

James raises five issues on appeal while Barbara cross-appeals with four issues. Because the issues deal primarily with the distribution of the marital estate, we rephrase the issues as follows:

1.  Did the District Court err in its distribution of the marital estate?

2.  Did the District Court err in ordering $300 in temporary maintenance?

3.  Did the District Court err in awarding Barbara $350 per month in maintenance for three years?

4.  Did the District Court err in failing to award Barbara attorney fees and costs?

James and Barbara were married on May 20, 1977. At the time of the hearing, James was 65 years old and Barbara was 43 years old. James began working for Pacific Northwest Bell and its successor corporation, U.S. West Communications, in 1947 as a lineman, and continued working in that position for approximately

2

40 years until his retirement in 1988. Before taxes, James has a monthly income of approximately $1800 from social security and his U.S. West pension. During his employment, James participated in a savings plan and an Employee Stock Ownership Plan (ESOP). However, he did not have access to those funds until his retirement. James suffers from diabetes and high blood pressure, and because of his age and health problems, is unable to work.

Barbara worked as a nurses' aide at the Shriner's Hospital in Spokane prior to marrying James. During the marriage, Barbara earned an Associate of Arts degree in liberal arts and another Associate of Arts degree in hearing impaired services. Barbara worked as a deaf interpreter, and also obtained some computer skills at the University of Montana in Missoula. Throughout most of the marriage, Barbara maintained the household. From 1988 through 1990, Barbara earned between $3000 and $9000 a year. She currently lives in Spokane with her brother and is unemployed, with the exception of performing occasional odd jobs.

The parties separated on July 10, 1991. On July 29, 1991, Barbara filed a petition for dissolution in Spokane County, Washington. The summons and petition were served on James in Missoula on August 12, 1991. On August 7, 1991, James filed for dissolution in Missoula County. The Superior Court of Washington dismissed the pending action and changed jurisdiction to Missoula County.

On February 12, 1992, the District Court orally ordered James to pay $300 in a one time temporary maintenance award under the

belief that the matter would be decided before the next maintenance check was due. On May 5, 1992, Barbara petitioned the court for clarification of the order. The court ordered James to pay maintenance until the final decree was issued. This resulted in James having to pay $1200 in back maintenance.

Trial was held on the matter on March 11 and 18, 1992. On May 29, 1992, the District Court issued its findings of fact, conclusions of law, and order. On June 19, 1992, James filed his notice of appeal from the court's decree and the order for temporary maintenance.

## I.

Did the District Court err in its distribution of the marital estate?

This Court has stated that our standard of review relating to factual findings of the district court with regard to the division of marital property is whether the district court's findings are clearly erroneous. In re Marriage of Danelson (Mont. 1992), 833 P.2d 215, 219, 49 St. Rep. 597, 599. With regard to this Court's review of conclusions of law made by the district court, we have stated that ""[w]e are not bound by the lower court's conclusions and remain free to reach our own."" Danelson, 833 P.2d at 219-20 (quoting Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523). In adopting these principles of review in division of the marital estate, we have stated that:

> [T]his Court is not in any way discounting the
> considerable discretionary power that must be exercised
> by district courts in these cases. The courts are

4

obligated to fashion a distribution which is equitable to each party under the circumstances. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court. [Citation omitted.]

Danelson, 833 P.2d at 220.

In this instance, James argues that the District Court erred in determining that the ESOP stock was part of the marital estate, that the court misstated the total value of the ESOP stock, and that it miscalculated when dividing the stock between the parties. Barbara argues that the court erred in distributing the ESOP stock proceeds which were calculated by a formula that measured the length of the stock option plan over 40 years, instead of from 1976. Barbara also contends that the court's valuation of the stock is erroneous.

We must first answer the question of whether the ESOP stock was properly included in the marital estate. Section 40-4-202(1), MCA, provides that when dividing a marital estate, the district court shall "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired . . . ." In addition, the statute requires that the district court consider contributions of the other spouse to the marriage when dividing the marital estate, which includes the nonmonetary contributions of a homemaker and the extent to which

5

such contributions have facilitated the maintenance of the property. Section 40-4-202(1)(a) and (b), MCA. We have stated that retirement benefits are properly included within the marital estate and are subject to division. In re Marriage of Holston (1983), 205 Mont. 470, 474, 668 P.2d 1048, 1050.

In its findings of fact, the court ruled that during most of the parties' 14-year marriage Barbara maintained the home, her contributions as a homemaker contributed to the marital estate, and the stock was earned in a community property state. The domestic services provided by Barbara enabled James to continue working at his place of employment and contribute to his savings plans. Moreover, if James had passed away before receiving the stock, the benefits would have gone to Barbara. With the exception of the purchase of some lithographs, James used proceeds from the sale of stock to purchase jointly held marital property. Therefore, we conclude that the District Court properly included the stock as a marital asset.

Even though the stock was considered part of the marital estate, the District Court erred in the valuation and distribution of the stock. The court, in its conclusions, valued the total sale of the stock at $49,109. After the vesting of the retirement plans in 1988, James sold between $16,000 and $19,000 to purchase a pickup truck which was held jointly by the parties. In 1990, the parties sold additional stock for approximately $12,000 to $13,000 and used the proceeds to make a down payment on a home in Missoula and to purchase furniture for the home. After the date of

6

separation, but prior to the dissolution, James sold the remaining stock for $30,109 and used $10,500 for the purchase of 35 lithographs. Although the total value of the stock was apparently not stated by the parties, testimony concerning the proceeds from the sale of the stock leads to the conclusion that the District Court failed to take into account stock sold for the down payment on the home and the furniture when valuing the estate. We remand to the District Court for reconsideration of the value and distribution of the stock. Any additional concerns the parties may have relating to the distribution of the stock may be raised with the District Court.

James also contends that the District Court should not have included the Idaho property in the marital estate. Both parties argue that the division of the proceeds resulting from the sale of the property is incorrect. James argues that the property was purchased on a ten-year contract in 1970, seven years prior to the marriage, the property was paid off within three years of the marriage, and only taxes were paid on the property from 1980 to 1991. James declares that although payments came out of the parties' joint checking account, no evidence was produced by Barbara to show that she contributed to that account. Citing In re Marriage of Scott (Mont. 1992), 833 P.2d 710, 49 St. Rep. 634, James contends that property division in a Montana dissolution is not governed by community property laws of another state.

We reiterate that to divide property acquired prior to entering into a marriage contract, the District Court must examine

7

the factors set out in § 40-4-201(1)(a) and (b), MCA. We have stated that in Montana, property division need not be equal, but instead, must be equitable. Scott, 833 P.2d at 712. James and Barbara conveyed a one-half interest in the property to James' son and daughter-in-law. The owners later sold their interest in the property. James' and Barbara's share was $9657. Barbara testified that they were paying on the property prior to the marriage. Barbara further testified that they had considered the property as a place to retire. The record shows that Barbara's name appears on a 1977 warranty deed that was executed to convey interest in the property to James' son and daughter-in-law. Barbara signed the buy-sell agreement as seller of the property. In addition. she testified that the monthly payments and taxes on the property were paid out of the parties' joint checking account. That statement was not contradicted by James. Therefore, it was proper for the District Court to include the Idaho property in the marital estate.

Finally, both Barbara and James complain that the District Court erred in its calculation when distributing the proceeds of the sale of the Idaho property. The court awarded Barbara two-thirds of the one-half interest ($9657) of the proceeds from the sale of the property. According to the District Court, Barbara's share was $3235. We remand to the District Court to correct this mathematical error. With the exception of the mathematical error, we hold that the District Court equitably divided the Idaho property between the parties.

8

## II.

Did the District Court err in ordering a $300 temporary maintenance award?

On February 12, 1992, the District Court held a hearing to determine whether Barbara should be entitled to temporary maintenance. The court orally ordered James to pay a one time maintenance award of $300, under the belief that the case would be decided the following month. The court minutes stated that James was responsible for a $300 monthly temporary maintenance payment. James paid the temporary maintenance in February, but did not pay any maintenance during the remaining months preceding the court's decision. On May 5, 1992, Barbara filed a motion requesting that the court clarify its order regarding maintenance. On May 20, 1992, the District Court ordered James to pay $300 a month until the court rendered a decision. James appeals this order.

We previously stated that § 40-4-121(7)(a) and (b), MCA, grants considerable authority to make a temporary maintenance award retroactive. "It was well within the District Court's power after hearing on the matter of . . . maintenance, to make the order retroactive." In re Marriage of Revious (1987), 226 Mont. 304, 312, 735 P.2d 301, 306.

A hearing was conducted by the court regarding temporary maintenance and it found that there should be a $300 payment each month from February. We hold that the District Court did not err in ordering retroactive temporary maintenance payments.

9

III.

Did the District Court err in awarding Barbara $350 per month in maintenance for three years?

We have stated in the past that our standard of review to determine whether the award of maintenance is proper is whether the district court's findings of fact are clearly erroneous. In re Marriage of Eschenbacher and Crepeau (Mont. 1992), 831 P.2d 1353, 49 St. Rep. 393. The district court may award maintenance after the marital property has been equitably distributed and the court has properly applied the criteria of § 40-4-203, MCA. Also, the district court may grant an award of maintenance for either spouse if the court finds that the spouse requesting maintenance "lacks sufficient property to provide for his reasonable needs" and "is unable to support himself through appropriate employment . . . ." Section 40-4-203(1)(a) and (b), MCA.

In its findings, the court believed that Barbara had not actively sought employment and her only income came from temporary maintenance and odd jobs. The court stated that for Barbara to be employed as a deaf interpreter she would need to take additional classes. Her expenses were $1075 per month, not including the cost of any further education. If she earned either minimum wage, or the wage she received at her previous employment, neither would cover her current expenses. The court considered her age, length of marriage, her standard of living during the marriage, her physical and emotional condition, and James' ability to meet his needs while assisting Barbara for a reasonable period of time. As

10

a result of these findings, the court concluded that Barbara was eligible for maintenance of $350 a month for three years. The court properly considered the factors set out in § 40-4-203(1), MCA. We hold that the District Court did not err in the award of maintenance.

## IV.

Did the District Court err in failing to award Barbara attorney fees and costs?

Barbara claims that the District Court erred in not awarding her attorney fees. Section 40-4-110, MCA, states that the district court may, after considering the financial resources of the parties, order a party to pay reasonable attorney fees and costs. This is a permissive, not a mandatory statute. We have stated that absent an abuse of discretion, this Court will not overturn the district court's decision denying attorney fees. In re Marriage of Manus (1987), 225 Mont. 457, 733 P.2d 1275. It is clear from the District Court's extensive findings that the financial resources of the parties were considered and Barbara has a sufficient cash award to pay her attorney fees. We hold that the District Court did not abuse its discretion in failing to award Barbara attorney fees.

Affirmed in part and remanded to the District Court for reconsideration of the value and distribution of the stock and to correct a mathematical error regarding the distribution of the proceeds from the sale of the Idaho property.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

March 4, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Christopher Daly
Attorney at Law
101 E. Broadway, Ste. 200
Missoula, MT 59802

Gail Haviland
Worden, Thane & Haines
P.O. Box 4747
Missoula, MT 59806

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy