No. 94-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF:

KAREN HEATH,

    Petitioner and Appellant,

    -v-

GREGORY HEATH,

    Respondent and Respondent.

FILED

AUG 31 1995

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marcelle C. Quist, Carolyn S. Parker, Quist Law
Firm, Bozeman, Montana

    For Respondent:

        William A. Bartlett, Angel, Screnar, Coil, Bartlett
& Fay, Bozeman, Montana

Submitted on Briefs:  March 16, 1995

Decided:  August 31, 1995

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Appellant, Karen Heath (Karen), brought an action requesting the District Court of the Eighteenth Judicial District, Gallatin County, to find Respondent, Gregory Heath (Gregory), in contempt for failing to make payments as required by a Custody, Support and Property Settlement Agreement incorporated into their final decree of dissolution. The court determined that Karen had not been reasonable in incurring expenses on behalf of the parties' minor children or in her motion to hold Gregory in contempt. The court awarded Gregory his reasonable and necessary attorney fees, the amount to be established by a separate hearing. Karen appeals. We affirm in part, reverse in part and remand.

The issues on appeal, as framed by this Court, are:

1. Did the District Court err by failing to find Gregory in contempt for not complying with the dissolution decree incorporating the parties' contractual agreement?

2. Did the District Court err in awarding attorney fees to Gregory?

Background Facts

The District Court dissolved the marriage of Karen and Gregory on June 11, 1990. The parties had previously entered into a settlement agreement providing for the custody and support of their three minor children. This agreement was incorporated into the Decree of Dissolution of Marriage and provided for the following: Karen would have custody of the children, subject to visitation with Gregory upon mutual agreement of the parties; Gregory would

2

maintain a health insurance policy for the children, sharing the deductible and uncovered expenses with Karen at a ratio of 75% to Gregory and 25% to Karen; Karen and Gregory would share monthly day-care expenses and all private school tuition incurred by the children based upon the same percentages; Gregory would pay child support in the amount of $245.00 per child per month; Gregory would maintain a $150,000 life insurance policy on his life with Karen as owner and the children named as primary, joint, irrevocable beneficiaries; and Gregory would place $200 per month into a joint, interest-bearing education fund requiring the signatures of both Karen and Gregory.

Karen and the children subsequently moved to Louisiana, where Karen attends the University of New Orleans, studying computer science. Gregory, a stockbroker, remarried and adopted his two step-children. He continues to reside in Bozeman.

On July 13, 1993, Karen moved the District Court to hold Gregory in contempt for failing to make payments as required by the June 11, 1990 decree. The arrearages claimed by Karen included: $1,484.50 for child support and maintenance; $857.25 for medical expenses not covered by insurance; $4,632.95 for day-care expenses; $2,165.00 for tutorial expenses; $1,990.04 for health insurance premiums; $6,797.62 for the children's education fund; and $875.00 for life insurance premiums.

A hearing on Karen's Motion for Contempt was held on August 18, 1993. Karen traveled to Montana to attend the hearing. In the middle of her cross-examination, the District Court stopped the

proceeding and ordered the parties to attend mediation. When the parties failed to resolve the matter, a new hearing date was set. Karen was unable to attend the second hearing, but was represented by her attorney.

At the second hearing, Gregory delivered to Karen's attorney two checks totaling $399.15 for uncovered medical expenses. The remaining $458.10, for glasses for their son Scott, remained in dispute. In addition, it was determined that the $1,484.50 in child support arrearages had already been collected by the Child Support Enforcement Division.

In its May 3, 1994 Findings of Fact and Conclusions of Law, the District Court concluded that Karen had not been reasonable in incurring expenses on behalf of the children and in her motion to hold Gregory in contempt. The court determined that Gregory owed Karen $2,316.48 for day-care expenses and that all other amounts claimed by Karen were unreasonable or unnecessary. In addition, the court found that Karen unjustifiably denied Gregory visitation and ordered an offset of $550 to reimburse Gregory for travel expenses to Louisiana. The court also determined that Gregory was the prevailing party for purposes of awarding attorney fees.

The District Court entered Judgment on June 28, 1994, incorporating its earlier findings and conclusions. Karen appeals this Judgment.

## Issue 1

Did the District Court err by failing to find Gregory in contempt for not complying with the dissolution decree

4

incorporating the parties' contractual agreement?

Karen filed a motion to have Gregory held in contempt for failing to make payments as required by the June 11, 1990 Decree of Dissolution of Marriage. The District Court denied Karen's motion and refused to hold Gregory in contempt, finding instead that Gregory had substantially complied with the provisions of the divorce decree.

As a general rule, contempt orders are final and not reviewable by this Court except by writ of certiorari. Section 3-1-523, MCA. However, we have created an exception in family law cases, to review contempt orders on appeal. Woolf v. Evans, (1994), 264 Mont. 480, 483, 872 P.2d 777, 779. Our review is limited to examining the record to determine whether the district court acted within its jurisdiction and whether the evidence supports the district court's findings with respect to the contempt. Woolf, a72 P.2d at 779.

Karen and Gregory voluntarily entered into a Custody, Support and Property Settlement Agreement, as provided by § 40-4-201(1), MCA. The agreement was not found to be unconscionable and was incorporated into the parties' final dissolution decree. Section 40-4-201(4), MCA, provides that if the court finds that the separation agreement is not unconscionable, "its terms shall be set forth in the decree of dissolution . . . and the parties shall be ordered to perform them . . ."

Montana courts are required by statute to interpret dissolution of marriage agreements by the law of contracts. Quinn

5

v. **Quinn** (1981), 191 Mont. 133, 136, 622 P.2d 230, 232 (citing §
40-4-201(5), MCA). If the language used in a contract is clear and
explicit, it controls the contract's interpretation. Quinn, 622
P.2d at 232 (citing § 28-3-401, MCA). If the parties find the
terms of an agreement unreasonable or not in the best interests of
the parties' children, the proper procedure is to move the court to
modify the agreement.

> Once an obligor's payments become due under a decree of
> divorce they are fixed and absolute, and the law puts the
> burden upon the obligor to make *a positive act* if he
> desires to modify these obligations. [Emphasis added.]

State of OR. ex rel. Worden v. Drinkwalter (1985), 216 Mont. **9**, 14,
*700* P.2d 150, 153. Furthermore, § 40-4-208(1), MCA, provides:

> a decree may be modified by a court as to maintenance or
> support only as to installments accruing *subsequent to*
> actual notice to the parties of the motion for
> modification. [Emphasis added. ]

Here, Gregory has never filed a motion to modify the agreement
contained in the court's decree of dissolution nor made any other
positive act toward modification. Instead, he unilaterally has
decided which provisions of the agreement to honor and the extent
to which he will perform others

Karen is attempting to enforce the court's dissolution decree
containing the parties' contractual agreement and obtain the
amounts due her under the clear and explicit provisions of the
decree and agreement. To that end, she filed a **motion** to hold
Gregory in contempt for violating the decree by not paying certain
expenses.

The disobedience of any lawful judgment, order, or process of

6

the court constitutes contempt of the authority of the court. Section 3-1-501(1)(e), MCA; Woolf, 872 P.2d at 781. The District Court refused to hold Gregory in contempt, finding instead that Gregory had substantially complied with the decree and agreement. We conclude that the evidence does not support that finding. We will review each of the arrearages claimed by Karen and the District Court's determination as to contempt in relation to each claim.

First, the District Court found that the purchase of eyeglasses for the parties' son Scott was neither necessary nor reasonable and the court determined, in essence, that Gregory had not violated the decree and agreement by refusing to reimburse Karen for his share of the eyeglass expense. The decree and agreement state that Gregory is to pay a portion of "all" medical expenses not covered by insurance. Although it was later determined that Scott did not need the eyeglasses, they were recommended by a professional and ultimately resulted in a diagnosis of epilepsy. The evidence does not support the District Court's finding that Gregory's failure to reimburse Karen for the purchase of the eyeglasses did not violate the decree.

Second, the District Court found that Karen had been "less than economical in her use of daycare" and the court determined that Gregory had not violated the decree and agreement by refusing to reimburse Karen for his share of the day-care expenses. The decree and agreement provide that both parties are to share all necessary monthly day-care expenses. Gregory disputes the cost of

the day-care facility that Karen chose.  Although it was determined that the day-care facility at the University of New Orleans only charged one dollar an hour, Karen testified that she could not leave her children there because the facility would only take children up to age five.  Karen testified that she investigated other day-care facilities and chose the least expensive.  She also testified that she had to pay for child care by the month to ensure the facility would reserve a space for her children.

Gregory did not present any evidence to refute Karen's statements regarding the cost of day care in Louisiana.  Merely because Gregory disagreed with the policy and procedures of the day-care provider requiring payment by the month rather than payment only for the days the children attend day care, does not mean that the day-care expenses incurred by Karen were not necessary and reasonable.  The evidence does not support the District Court's finding that Gregory's failure to reimburse Karen for day-care expenses did not violate the decree.

Third, the District Court found that the expenses for Scott's tutor were neither reasonable nor necessary and determined that Gregory had not violated the decree and agreement by refusing to reimburse Karen for his share of the tutoring expenses.  The decree and agreement provide that both parties are to share all private-school tuition incurred by the children.  Gregory decided that the tutor was not doing Scott any good and he refused to pay for Scott's tutoring expense.  Gregory is not a professional educator.  Karen incurred an expense doing what she had been advised to do by

8

professionals and what she believed was in the best interest of her child. The evidence does not support the District Court's finding that Gregory's failure to reimburse Karen for Scott's tutoring expenses did not violate the decree.

Fourth, the District Court found that Gregory's ESOP and 401K plans substantially complied with the decree and agreement and that Gregory had not violated the decree and agreement by refusing to set up a separate educational fund. The decree and agreement provide that Gregory will place $200 per month into an educational fund for the parties' three children. The ESOP and 401K plans offered by Gregory to replace the educational fund offer no protection for the parties' three children as Gregory and his adopted children can use these plans for education, purchase of a home or retirement. In addition, the decree and agreement specified that the account was to be in both Karen and Gregory's names and required both of their signatures for withdrawal. The ESOP and 401K plans do not meet these requirements. The evidence does not support the District Court's finding that Gregory's failure to set up a separate educational fund did not violate the decree.

Fifth, the District Court found that Gregory had satisfied his obligation to provide health insurance and determined that Gregory had not violated the decree and agreement by refusing to reimburse Karen for the premiums on an additional health insurance policy. The decree and agreement required that Gregory maintain a policy of health insurance for the children. With the exception of the two

9

months when he was between jobs, Gregory did provide health insurance coverage for the children. During the two-month lapse, Gregory paid uncovered medical expenses. The evidence does support the District Court's findings that Gregory satisfied his obligation to provide health insurance and that Gregory's failure to reimburse Karen for the premiums on an additional health insurance policy did not violate the decree.

Last, the District Court found that Gregory's current life insurance plan in the amount of $125,000 substantially complied with the decree and agreement and that Gregory had not violated the decree and agreement in this respect. However, the decree and agreement state that the life insurance shall be "not less than" $150,000. This means a benefit of $50,000 for each of the parties' three children. Gregory's current policy is for the benefit of his two adopted children as well as the parties' three children. This means a benefit of only $25,000 per child. The evidence does not support the District Court's finding that Gregory's current policy does not violate the decree as each of the parties' three children lose $25,000 in benefits under this current policy. Additionally, Gregory's current policy does not list Karen as the owner of the policy as required by the decree and agreement.

In addition to denying Karen's Motion for Contempt, the District Court found that Karen unjustifiably denied Gregory visitation and the court ordered an offset of $550 for Gregory's travel expenses to Louisiana. Although the offset has no bearing on the contempt issue, it was raised at the hearing and both

10

parties address it on appeal. We will, therefore, address it here.

Scott had been having problems completing his homework assignments. To improve his behavior, he was placed on a program where he had to complete his homework or be grounded on the weekends. When Scott failed to complete all of his homework assignments during the week prior to Gregory's visit, Karen grounded Scott and refused to let him go on an outing with Gregory and the other two children.

We agree with the District Court that Gregory should be allowed an offset for travel expenses to Louisiana. Although Karen may have thought she was acting in Scott's best interest, a non-custodial parent's reasonable visitation rights should not be denied absent a showing that visitation would seriously endanger the child's physical, mental, moral or emotional health. Section 40-4-217(1), MCA. Karen could have found some other way to punish Scott rather than denying him an outing with his father, particularly when the father must travel across the country to see the children.

Nevertheless, we hold that Gregory failed to pay support as ordered by the dissolution decree and Karen properly filed a petition in District Court to find Gregory in contempt. As our review of the arrearages claimed by Karen shows, the evidence does not support the District Court's findings denying Karen's Motion for Contempt. Gregory did not comply with the decree of dissolution incorporating the parties' contractual agreement. Accordingly, we reverse and remand for reconsideration and further

11

proceedings in light of this opinion.

Issue 2

Did the District Court err in awarding attorney fees to Gregory?

Because we reverse the District Court's findings regarding Gregory's compliance with the decree of dissolution incorporating the parties' contractual agreement, we also reverse the award of attorney fees and remand to the District Court for reconsideration and further proceedings in light of this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings in light of this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Justice Karla M. Gray, specially concurring.

I concur in most of the Court's opinion, but not in that portion which addresses Gregory's responsibility for part of Scott's tutoring expenses. Notwithstanding, I join in the results reached by the Court.

With regard to the expenses for tutoring Scott, the decree and agreement require Karen and Gregory to share the expense of "all private school tuition incurred by the minor children." Tutoring expenses are not school tuition. Thus, it is my view that Gregory is not responsible for any portion of the tutoring expense and did not violate the decree by refusing to pay a portion of that expense.

Nevertheless, it is clear that Gregory violated the decree and agreement in a number of ways. Therefore, I join in the Court's remand for further proceedings on Karen's motion for contempt.

_____
Justice

13

Justice William E. Hunt, Sr. dissenting.

What the **majority** has done in its opinion is retry the case and then infer, based on its findings, that the husband must be held in contempt. That decision is uniquely within the discretion of the District Court.

I would affirm the District Court.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent.

_____
Justice

14

August 31, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Carolyn S. Parker
QUIST LAW FIRM, L.L.C.
1807 West Dickerson, Suite D
Bozeman MT 59715

William A. Bartlett
ANGEL, SCRENAR, COIL, BARTLETT & FAY
125 West Mendenhall
Bozeman MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy