No. 02-580

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 59

IN RE THE MARRIAGE OF

ROBERT MEASE,

　　　　　Petitioner and Appellant,

　　and

BRENDA MEASE,

　　　　　Respondent and Respondent.

APPEAL FROM:　　District Court of the Eighth Judicial District,
　　　　　　　　　In and for the County of Cascade, Cause No. ADR-96-070,
　　　　　　　　　The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　E. Lee LeVeque, Lee LeVeque Law Offices, PLLC, Great Falls, Montana

　　　　　For Respondent:

　　　　　Robyn L. Weber, Weber Law Firm, PLLC, Helena, Montana

　　　　　　　　　　Submitted on Briefs:　August 28, 2003

　　　　　　　　　　　　　Decided:　March 11, 2004

Filed:

_____
　　　　　　　　　　　Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Robert Mease (Robert) appeals from an order of the Eighth Judicial District Court, Cascade County, regarding his maintenance obligations to his ex-wife Brenda Mease (Brenda). We affirm in part and reverse in part.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in holding Brenda was entitled to pre-dissolution, temporary maintenance and child support payments given the later settlement agreement between the parties?

¶4 2. Did the District Court err in holding Robert's maintenance obligation was based on his before tax income instead of his after tax income?

¶5 3. Did the District Court err when it failed to credit Robert's maintenance obligation with expenses he incurred?

¶6 4. Did the District Court err in subjecting Robert's salary to automatic wage withholding in order to satisfy his maintenance obligation?

¶7 5. Did the District Court err in awarding Brenda attorney fees?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶8 Robert and Brenda married in 1968. They had two daughters. During the majority of their marriage, Brenda worked in the home. By 1996, the parties lived in a house in Great Falls and retained ownership of another residence in Connecticut.

¶9 In February 1996, Robert petitioned to dissolve the marriage. At the time of his petition, one of the daughters had already reached the age of majority. During the pending dissolution proceedings, the parties stipulated to temporary maintenance and child support

2

to provide for Brenda and the minor daughter. This agreement provided that Robert pay $3,000 per month to Brenda for maintenance and child support through entry of a final decree. The stipulation was adopted as an order by the court effective as of the date of signing by the parties in May 1996. Brenda made the mortgage payments on both the Great Falls residence and the Connecticut residence out of this payment.

¶10 While the dissolution proceedings were still pending, Robert ceased making the temporary payments. In March 1997, Brenda brought a motion to hold Robert in contempt for failure to make the temporary payments. In June, the court denied the motion for contempt but ordered Robert to make the payments. Robert then brought his payments current. However, in July he ceased making the payments again. Brenda did not make another motion to enforce the temporary payments. During this same time period, the parties agreed to put the Connecticut residence up for sale. Towards that goal, Robert gave Brenda $12,000 to pay for repairs needed to make the property marketable. However, in September he informed Brenda that he would consider that money as fulfilling his temporary maintenance obligation because she had not given him receipts for the repairs and he believed she did not make any repairs.

¶11 In October 1997, the parties entered into a settlement agreement regarding maintenance, child support, and the division of their debts and assets. This agreement provided among other things that Robert would pay $825 monthly child support until their youngest daughter reached majority. It also provided Robert would pay maintenance to Brenda until she turned 62 or remarried, calculated as a percentage of his income minus any income Brenda earned. The settlement agreement also released each party from past and

3

current claims and provided for attorney fees. The agreement was incorporated into the dissolution decree entered by the court later that month.

¶12 After the decree was entered, Robert paid the first maintenance payment but then failed to make any additional maintenance payments. Robert continued to make child support payments until their youngest daughter graduated from high school in June 2000.

¶13 In 2001, Brenda filed a motion to force Robert to comply with his maintenance obligations. Brenda sought the temporary maintenance due from before the settlement agreement was signed, the regular monthly maintenance payments due under the settlement agreement, and attorney fees. Robert asserted that he was not obligated to pay the temporary maintenance because he was released from such claims by the settlement agreement and because he had already paid Brenda. He also asserted that he did not pay the regular maintenance payments because Brenda did not give him proof of her wages to subtract from his payment and because of expenses he incurred due to her actions. Finally, he disputed how the maintenance obligation was to be calculated under the wording of the settlement agreement. While Brenda believed the amount was to be 15% of before tax income, Robert argued the amount was to be 15% of after tax income. In support of her position, Brenda introduced expert testimony by a certified public accountant regarding the meaning of certain terms in the settlement agreement.

¶14 After receiving testimony and evidence from the parties, the court found in Brenda's favor on all points and awarded her all the maintenance she sought. Although the court did not enter a judgment for the appropriate amounts, its order indicated Brenda was entitled to the temporary maintenance and the maintenance due through July 2002 and all attorney fees

4

and costs. The court also held that due to his repeated resistance to fulfilling his maintenance responsibility, Robert's wages were to be subject to wage withholding starting in August 2002. Robert now appeals. Further details are discussed below.

## II. DISCUSSION

¶15    Robert asserts that the District Court erred in adopting Brenda's proposed findings of fact and conclusions of law verbatim. However, we have often noted such an action is not error in and of itself. *In re Marriage of Stufft* (1996), 276 Mont. 454, 457, 916 P.2d 767, 769. Rather, the party disputing the order on appeal must show that the court's findings were not supported by substantial evidence or that the court made a conclusion of law that was incorrect. *Stufft*, 276 Mont. at 457, 916 P.2d at 769. Therefore, Robert's argument must be considered in relation to his specific disputes with those findings and conclusions. Accordingly, we turn to the specific arguments Robert makes on appeal.

### ISSUE ONE

¶16    Did the District Court err in holding Brenda was entitled to pre-dissolution, temporary maintenance and child support payments given the later settlement agreement between the parties?

¶17    Robert asserts the District Court erred in awarding Brenda $9,000 in temporary maintenance payments for July, August, and September 1997 because the parties released each other from such claims in the settlement agreement. He also argues he already paid her through the $12,000 check.

¶18    Brenda asserts the plain language of the release did not apply to the temporary maintenance payments. She cites *In re Marriage of Halverson* (1988), 230 Mont. 226, 749

5

P.2d 518, in support of her argument that the settlement agreement must mention the stipulation previously entered regarding temporary maintenance in order for the temporary maintenance to be waived. She also argues that a trial court has discretion to award retroactive temporary maintenance payments under *In re Marriage of Spence* (1993), 257 Mont. 188, 849 P.2d 161. In addition, Brenda asserts she made $12,000 in repairs to the Connecticut house and that she cannot prove these repairs because she and Robert agreed to make cash payments to contractors without receipts "under the table."

¶19 In its final order, the District Court held that the release language in the settlement agreement did not excuse Robert from liability for the temporary maintenance payments because the agreement did not mention the stipulation or that it required payments until a final decree was entered. The court simply held that the stipulation provided that Robert was to pay temporary maintenance, that the order entered pursuant to the stipulation had never been vacated, and that Robert had not paid the required maintenance.

¶20 After reviewing the language of the release, we agree with Robert. Whether the settlement agreement released Robert from his obligation to make up unpaid temporary maintenance payments is a matter of interpretation of the language of the contract. *Heath v. Heath* (1995), 272 Mont. 522, 527, 901 P.2d 590, 593; § 40-4-201(5), MCA. Such agreements are interpreted the same as any other contract in that plain language controls. *Heath*, 272 Mont. at 527, 901 P.2d at 593. If the release language bars Brenda's claim to the unpaid temporary maintenance, we do not need to consider the disputed factual issue of whether Robert already paid the temporary maintenance by virtue of the $12,000.

¶21 The settlement agreement between the parties states:

6

> MUTUAL RELEASE. Subject to the provisions of this agreement, each party has released and discharged, and by this agreement does for himself or herself, . . . release and discharge the other of and from all causes of action, claims, rights, or demands whatsoever, in law or in equity, which either of the parties ever had or now has against the other, except any or all cause or causes of action for dissolution of marriage and except for periodic child support payments as provided for herein.

This language clearly released Robert from any claims for prior, unpaid temporary payments. Contrary to the District Court's emphasis on the fact that the stipulation was not mentioned or vacated, the words "all causes of action, claims, rights, or demands *whatsoever* [emphasis added], in law or in equity, which either of the parties ever had or now has" by definition includes Brenda's claims for temporary maintenance. Robert specifically gave Brenda notice of this dispute when he sent her a letter in September telling her he would consider his temporary obligations fulfilled by the $12,000 check he gave her for repairs. If Brenda still intended to claim unpaid temporary maintenance, she had an obligation to except it from the "all causes of action" language of the settlement agreement. The District Court incorrectly interpreted the language of the release to require that it specifically mention the earlier stipulation. Consequently, the court erred in awarding $9,000 to Brenda on this basis.

¶22 Contrary to Brenda's assertions, *Halverson* does not require a different result here. In that case, the temporary stipulation provided "said [temporary] payments [were] to continue during the pendency of [the] action." *Halverson*, 230 Mont. at 231, 749 P.2d at 521. The parties then entered a farm partnership agreement dividing their assets, but, unlike this case, the agreement did not include a release regarding disputed claims. The husband stopped making the stipulated maintenance payments after the partnership agreement was entered. The wife then disputed whether or not the maintenance payments were still due

7

after the partnership agreement was entered but before the final decree was entered. The final decree was entered over a year after the partnership agreement was made. The District Court awarded the disputed temporary maintenance payments to the wife.

¶23 This Court affirmed holding that the temporary maintenance payments were still owed because the husband disputed payments that were due before the final decree was entered, payments that were due while the action was still pending under the plain language of the stipulation. *Halverson*, 230 Mont. at 231, 749 P.2d at 521. As mentioned, unlike this case, *Halverson* did not involve a settlement agreement releasing the respective parties from disputed claims. Therefore, in that case the stipulation controlled our interpretation. Here, Robert does not owe Brenda the temporary maintenance payments under the stipulation because she released him from this obligation by virtue of the later settlement agreement.

¶24 *Spence* is also distinguishable. In that case we dealt with whether or not a court can modify temporary maintenance payments effective retroactively before the court enters a final decree and while the action is still pending. *Spence*, 257 Mont. at 194, 849 P.2d at 165. We did not have to address a settlement agreement incorporated into the final decree that released the parties from prior claims, as in this case.

¶25 Finally, Brenda asserts Robert owes her the pro-rata portion of temporary maintenance due for October 1997 because he does not dispute this month. However, after the decree was entered Robert paid Brenda for the entire month of October pursuant to the final decree rather than pursuant to the stipulation. Therefore, Robert does not owe Brenda temporary maintenance for the months of July, August, September or October 1997. The District Court's decision awarding Brenda $9,000 in temporary maintenance is reversed and

8

vacated.

**ISSUE TWO**

¶26    Did the District Court err in holding Robert's maintenance obligation was based on his before tax income instead of his after tax income?

¶27    Robert asserts the District Court erred in concluding the language of the settlement agreement required his maintenance obligation to be based on before tax income rather than after tax income because he believes the plain language used in the agreement means after tax income.  He also argues the District Court erred in admitting testimony of Brenda's accounting expert on the intent of the parties because the expert admitted he had no actual knowledge of what the parties intended.

¶28    Brenda asserts the District Court properly interpreted the settlement agreement language to mean before tax income and properly considered the testimony of her expert. Brenda also argues that using disposable income to figure maintenance is unconscionable under *In re Marriage of Rowen* (1982), 199 Mont. 315, 649 P.2d 1259.

¶29    The District Court held that the settlement agreement language "gross disposable income" meant before tax income based on evidence of how Robert calculated his first and only regular maintenance payment and on the testimony of Brenda's expert.  On this matter of contract interpretation, we agree with the District Court.

¶30    An ambiguity exists when the contract wording is reasonably subject to two different interpretations.  *Wray v. State Compensation Ins. Fund* (1994), 266 Mont. 219, 223, 879 P.2d 725, 727.  Whether an ambiguity exists is a question of law.  *SAS Partnership v. Schafer* (1982), 200 Mont. 478, 482, 653 P.2d 834, 836.  When a contract term is

9

ambiguous, its interpretation requires a determination of a question of fact: the real intention of the parties at the time of contracting. *SAS*, 200 Mont. at 482, 653 P.2d at 836; *Klawitter v. Dettmann* (1994), 268 Mont. 275, 281, 886 P.2d 416, 420-21; *Gray v. City of Billings* (1984), 213 Mont. 6, 10, 689 P.2d 268, 270; *Dooling v. Casey* (1968), 152 Mont. 267, 275, 448 P.2d 749, 754. We do not disturb a trial court's finding of fact unless it is clearly erroneous. *Stufft*, 276 Mont. at 459, 916 P.2d at 770. Therefore, we must first determine if the settlement agreement language here is ambiguous. If it is we address the District Court's findings.

¶31 The clause at issue here reads:

> MAINTENANCE. Husband agrees to pay maintenance to Wife until she attains the age of 62, dies, or remarries, whichever occurs first. Husband shall pay maintenance on a monthly basis in an amount equal to 15% of Husband's *gross disposable income* from his primary employment. Gross income consists of base salary and any cash bonuses. Husband shall be entitled to an offset against his maintenance obligation any amounts earned by Wife in any year in the form of wages, salary or commissions. (Emphasis added).

We hold that, on its face, the term "gross disposable income" is ambiguous because gross income usually means before tax income, *see* 26 U.S.C. § 61 (gross income is "all income from whatever source derived"), and disposable income usually means income left after payment of taxes and other deductions, *see In re Marriage of Bross* (1993), 256 Mont. 174, 176, 845 P.2d 728, 729 (disposable income arrived at after payment of taxes and business expenses). Therefore, the District Court properly considered evidence of the parties' intent in order define "gross disposable income."

¶32 We cannot hold that the District Court was clearly erroneous in finding the parties intended Brenda's maintenance to be based on Robert's before tax income because of the

evidence of Robert's first payment that he himself calculated. Robert's income for the month of October 1997 was $7,000. Fifteen percent of $7,000 is $1,050, the amount he paid Brenda for that month. Robert's conduct is the best evidence of his intent, even though it is contrary to his testimony of intent at trial. Further, it is the only direct evidence of the parties' intent other than their individual self-serving testimony. Therefore, the court's determination that Robert's maintenance payment was calculated on gross before tax income rather than disposable after tax income is based on substantial evidence and is not clearly erroneous.

¶33 Despite this evidence, Robert argues this interpretation makes the use of the word "disposable" meaningless in the agreement and that we should give effect to every word to hold that "gross disposable income" is analogous to "take-home pay." However, because the clause is ambiguous in that "gross" and "disposable" income as used in this context have mutually exclusive meanings, the District Court properly looked beyond the language of the agreement to the parties' conduct. Indeed, under § 28-3-306, MCA, it was proper for the District Court to interpret the ambiguity in Brenda's favor. Section 28-3-306, MCA, reads:

> **Interpretation of terms that are ambiguous or were intended in a different sense by different parties.** (1) If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.
> (2) When the terms of an agreement have been intended in a different sense by different parties to it, that sense is to prevail against either party in which he supposed the other understood it; and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made.

In this case, the parties' proposed interpretations of before tax and after tax income are "equally proper." Thus, under § 28-3-306(2), MCA, the District Court's decision that a

11

before tax interpretation was intended is in accord with the statute because the maintenance provision was made in Brenda's favor.

¶34    Finally, Robert asserts the District Court could not consider the accountant expert's testimony introduced on Brenda's behalf to determine intent of the parties. However, to the extent the court considered the expert testimony to understand the technical accounting meanings of "gross" and "disposable," the court acted within its discretion. Indeed, Robert himself introduced Barron's accounting dictionary definition of "disposable income" in support of his argument of their intent. Brenda was entitled to do the same through an expert rather than a dictionary. Further, just as the evidence of Robert's conduct is evidence indicating intent through course of performance, *see* § 28-3-402, MCA; *cf.* § 30-2-208, MCA, evidence of the technical accounting definitions of gross and disposable was admissible to show the parties' intent as those words are to be interpreted as usually understood by professionals in the course of trade usage, *see* Rule 702, M.R.Evid.; § 28-3-502, MCA; *cf.* § 30-1-205, MCA. Therefore, the District Court properly admitted the accountant's testimony as evidence of intent. The District Court's decision awarding Brenda maintenance based on 15% of Robert's before tax income from November 1997 until the present is affirmed.

¶35    Because Brenda prevails on this issue based on the evidence presented at trial, we need not address her argument that using disposable income is unconscionable.

### ISSUE THREE

¶36    Did the District Court err when it failed to credit Robert's maintenance obligation with expenses he incurred?

12

¶37     Robert asserts that he should be credited for the additional $11,000 he spent on repairing the Connecticut house in order to get it sold, money he expended after the final decree was entered and after he had given Brenda $12,000 to complete the work. Because the parties agreed in the settlement agreement to split the net proceeds on the sale of the Connecticut house, he argues he is entitled to credit for this expense. He also argues he is entitled to credit for additional interest he was charged on loans unrelated to their marriage because Brenda defaulted on the mortgage on the Great Falls house after the final decree was entered and thereby hurt his credit rating.

¶38     Brenda asserts Robert is not entitled to credit for either of these expenses. She points out that she defaulted on the mortgage because Robert stopped paying maintenance and that she in fact spent the $12,000 Robert gave her on repairs to the Connecticut house.

¶39     The District Court concluded that Robert was entitled to credit for the October maintenance payment he made and for attorney fees and costs for an earlier motion that Brenda lost. Neither party disputes these credits. However, the court also apparently determined Robert was not entitled to any additional credits because Brenda paid some of the mortgage payments on the Connecticut house until it was sold.

¶40     After reviewing the record, we agree with the result reached by the District Court. Regarding Robert's expenditures on the Connecticut house, the settlement agreement clearly reads the parties were to split the "net proceeds." Therefore as a matter of contract interpretation, both parties are entitled to expenses incurred on the sale of the Connecticut house before the division of proceeds from the sale. The determination of relative expenditures by the parties to enable the sale was a finding of fact by the District Court

13

which we do not disturb unless it is clearly erroneous. *Stufft*, 276 Mont. at 459, 916 P.2d at 770. The court in effect determined that Brenda and Robert made approximately equal expenditures when it found that Brenda did spend some of the $12,000 on repairing the house and by Brenda's continued payments on both mortgages during the pending divorce proceedings. The District Court's finding was not clearly erroneous and Robert is not entitled to a credit for this amount.

¶41 Regarding Robert's loss of good credit due to the default on the Great Falls house mortgage, again, the language of the settlement agreement is controlling. *Heath*, 272 Mont. at 527, 901 P.2d at 593. On this issue the agreement reads: "[this property] shall be solely owned by Wife, who shall be responsible for all indebtedness thereon. Wife shall take whatever steps are necessary to have Husband removed as an obligor on the home debt."

¶42 However, even if Brenda breached this settlement agreement term, the proof of damages to his credit that Robert submitted at trial is insufficient to serve as basis for an award in his favor. This Court has held that a judgment for damages must be supported by substantial evidence that is not mere guess or speculation, although mathematical precision is not required. *Cremer v. Cremer Rodeo Land & Livestock Co.* (1981), 192 Mont. 208, 214, 627 P.2d 1199, 1202. Proof of damages must consist of a reasonable basis for computation and the best evidence obtainable under the circumstances which will enable a judge to arrive at a reasonably close estimate of the loss. *Smith v. Zepp* (1996), 173 Mont. 358, 370, 567 P.2d 923, 930 (citation omitted). In this case, Robert simply testified that he suffered approximately $1,700 in damage to his credit when he took out two car loans. He did not submit documentation to prove the damages and he himself stated the amount was

14

approximate. Therefore, there was insufficient documentation of the loss to Robert's credit, documentation that would have been simple to produce. The District Court properly denied Robert's request for damages to his credit because Robert failed to provide the court with proper proof.

## ISSUE FOUR

¶43 Did the District Court err in subjecting Robert's salary to automatic wage withholding in order to satisfy his maintenance obligation?

¶44 Regarding the continued maintenance payments that would come due in the future, the District Court found that Robert "has a history of ignoring his maintenance obligation until the Court orders him to pay it." Therefore, the court ordered that "[a]ll present maintenance obligations should be paid via wage withholding order."

¶45 Robert asserts the District Court erred in subjecting his income to automatic wage withholding because, unlike child support, this mechanism is not allowed for maintenance until there is a judgment for a past due amount, execution, and garnishment. Robert further asserts that Brenda failed to produce credible evidence that she has had no income in the intervening years and that he is entitled to deduct her income from his maintenance payments under the language of the settlement agreement. He argues that what evidence she did produce is not credible because she was able to live on no maintenance from him and no income from wages while still increasing her savings. He also asserts the District Court erred in finding that she is disabled because she introduced no medical evidence to support her position.

¶46 Brenda asserts that because the District Court could eventually order wage

withholding as a garnishment if she were to execute a judgment against Robert, the court's action was not in err given Robert's undisputed history of failure to make payments. She also argues the court's findings of fact regarding her lack of income and inability to work were supported by substantial evidence.

¶47 Although the District Court did not cite the statute giving it authority to subject Robert's income to wage withholding, we hold that the court had such authority. Under § 40-4-207, MCA, a trial court may order a person paying maintenance to assign part of his or her periodic earnings. Section 40-4-207, MCA, reads:

> **Assignments.** The court may order the person obligated to pay support or maintenance to make an assignment of a part of his periodic earnings or trust income to the person entitled to receive the payments. The assignment is binding on the employer, trustee, or other payor of the funds 2 weeks after service upon him of notice that it has been made. The payor shall withhold from the earnings or trust income payable to the person obligated to support the amount specified in the assignment and shall transmit the payments to the person specified in the order. The payor may deduct from each payment a sum not exceeding $1 as reimbursement for costs. An employer shall not discharge or otherwise discipline an employee as a result of a wage or salary assignment authorized by this section.

The Commissioners' Note to this section states that the statute "provides an additional method of assuring that obligations for support and maintenance will be met when due." The Commissioners' Note also indicates that the statute's mechanism is analogous to garnishment.

¶48 Section 40-4-207, MCA, addresses maintenance and permits a trial court to ensure its orders are followed. Further, Robert's repeated failure to pay maintenance in the past is proper grounds for an order requiring him to assign wages under § 40-4-207, MCA. Therefore, in aid of its order regarding Brenda's future maintenance payments, the District

16

Court had the power to require Robert to assign part of his wages and in effect subject his income to automatic wage withholding. The District Court's order subjecting Robert's income to automatic wage withholding is affirmed in that Robert is required to assign 15% of his gross income, as defined above, when periodically earned to Brenda through notice to his employer. The District Court shall so order on remand.

¶49 In arguing his wages should not be subject to withholding, Robert also asserts he is entitled to an offset for Brenda's income under the terms of the settlement agreement. We agree he is entitled to an offset under the terms of the agreement for Brenda's "wages, salary, or commissions." However, in order to address this argument, Robert's past maintenance and future maintenance obligations must be considered separately.

¶50 Regarding the past obligations, Robert asserts that given the evidence submitted at trial, Brenda's proof of lack of past income is not credible because she was able to live on no income and no maintenance from him. Robert therefore argues he does not have to pay maintenance. We defer to the District Court's finding of fact unless the finding is clearly erroneous. *Stufft*, 276 Mont. at 459, 916 P.2d at 770. Further, the district court is in the best position to observe and judge witness credibility, therefore, "[w]e will not second guess the district court's determination regarding the strength and weight of conflicting testimony." *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 494, 905 P.2d 138, 142. The court found that Brenda had no past income. This finding is based on testimony from Brenda which serves as substantial evidence for the court's decision. Therefore, as to past maintenance due, the District Court has already determined that the offset to Robert's payments for Brenda's income is zero and we affirm.

¶51 Regarding future maintenance, the District Court did not address how the offset was to be calculated in light of Robert's wage assignment. Instead, the court simply found that Brenda was unable to work. Robert asserts this finding is not credible because Brenda did not submit sufficient evidence of medical disability. We disagree. This finding is based on testimony from Brenda which serves as substantial evidence for the court's decision. Again, we do not reverse a trial court's finding of fact unless it is clearly erroneous. *Stufft*, 276 Mont. at 459, 916 P.2d at 770.

¶52 The language of the settlement agreement applies to Brenda's "wages, salary, or commissions," in other words, income earned from working. This arrangement, for an offset against maintenance, was entered into by agreement of the parties. While it may be cumbersome, it is not unconscionable, it was ordered by the District Court pursuant to the original settlement agreement, and it will be enforced. Robert shall make the required payments by wage assignment as previously discussed. Then, annually, or if Robert chooses to petition the court to arrange some other interval, Brenda shall advise him of all wages, salaries, and commissions she earned and the appropriate offset can be made. If necessary, the enforcement procedures provided by law are applicable.

¶53 Finally, we note that the District Court did not enter a specific final judgment amount regarding past due maintenance. Rather, the court stated that it would issue a later judgment after Robert had furnished necessary income information. Thus we remand for entry of an appropriate judgment.

¶54 Although Brenda asserts that immediate wage withholding may take place for these past due amounts under the garnishment statute codified at § 25-13-614, MCA, rather than

18

first executing on a judgment, her interpretation of the import of this statute is in error. While she is correct that this statute allows garnishment from wages for maintenance obligations, it does not excuse the need to execute on either a judgment or an order before garnishment is allowed. *White v. White* (1981), 195 Mont. 470, 636 P.2d 844 (judgment for past due maintenance the same as any other judgment). Therefore, Brenda needs to take the next step and execute before Robert's salary can be subject to garnishment for past due amounts.

### ISSUE FIVE

¶55 Did the District Court err in awarding Brenda attorney fees?

¶56 The District Court simply awarded Brenda "all of her attorney's fees." There is no amount mentioned and there is no further discussion or proof of fees incurred. Robert asserts the District Court erred in awarding Brenda attorney fees because such an award must be based on a showing of necessity under § 40-4-110, MCA. Brenda asserts that the findings of the court regarding her income demonstrate necessity and that therefore, the court did not err in awarding her attorney fees.

¶57 We review a district court's award of attorney fees to determine whether the court abused its discretion. *Mortgage Source, Inc. v. Strong*, 2003 MT 205, ¶ 8, 317 Mont. 37, ¶ 8, 75 P.3d 304, ¶ 8. Here, neither the parties nor the court address the fact that the settlement agreement incorporated into the final decree contains a provision regarding attorney fees. This clause reads:

> FUTURE ATTORNEY'S FEES. Should any action be commenced to enforce, modify, or interpret any provisions contained herein, the court, as a cost of suit, shall award a reasonable attorney's fee to the successful party.

19

This provision controls over § 40-4-110, MCA, because we enforce settlement agreements like any other contract. *Heath*, 272 Mont. at 527, 901 P.2d at 593; § 40-4-201(5), MCA. Because Brenda prevailed in the District Court, she would normally be entitled to fees under this contract term.

¶58 The general rule is that an award of attorney fees in a contract action requires introduction of proof from which a reasonable fee may be determined even though the contract terms provide for payment of a fee. *Crncevich v. Georgetown Recreation Corp.* (1975), 168 Mont. 113, 119-20, 541 P.2d 56, 59. In order to determine the reasonableness of the fees, a trial court reviews: (1) the amount and character of the services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys. *Swenson v. Janke* (1995), 274 Mont. 354, 361, 908 P.2d 678, 682-83. In sum, for attorney fees to be awarded by a trial court, there must be some type of proof of amount and reasonableness introduced into the record by counsel.

¶59 The record contains no proof of the amount of a reasonable fee. Therefore, the District Court abused its discretion when it failed to assess the reasonableness of Brenda's attorney fees before awarding "all" her fees. As we held in *First Sec. Bank v. Tholkes* (1976), 169 Mont. 422, 429-30, 547 P.2d 1328, 1332-33, without evidence of any of the above factors introduced in the district court, the award of attorney fees was improper. We remand the issue to the trial court for a proper determination of fees.

### III. CONCLUSION

¶60 Because the District Court incorrectly interpreted the release language in the settlement agreement, we reverse that portion of the order awarding Brenda $9,000 in temporary maintenance. We affirm that part of the order directing Robert to base his maintenance payments on 15% of his before tax income because the court properly found the parties' intent. We affirm that part of the order denying Robert credit for repairs he paid for on the Connecticut residence because the court's findings on this issue were based on substantial evidence. We affirm the denial of credit to Robert for the increased cost of two loans he secured due to Brenda's failure to remove him from the mortgage on the Great Falls residence because he failed to introduce proper proof. We affirm the order subjecting Robert's income to wage withholding and remand to the court to require Robert to assign 15% of his before tax periodic earnings to Brenda. Finally, in this instance we remand that part of the order awarding Brenda attorney fees for a proper determination of fees. Both parties are to pay their own fees and costs on appeal. We remand for entry of judgment consistent with this Opinion.

/S/ JOHN WARNER

We Concur:

/S/ JIM REGNIER
/S/ JIM RICE

Justice Patricia O. Cotter concurring and dissenting.

¶61 I concur in the Court's disposition of Issues 2, 3, 4, and 5. I respectfully dissent from the Court's disposition of Issue 1.

22

¶62   In reversing the District Court's conclusion that Brenda was entitled to receive the sum of $9,000 in temporary support and maintenance, this Court appears to relegate a binding Order of the issuing court requiring Robert to pay Brenda $3,000 per month "pending disposition of this proceeding, through the entry of a final decree . . ." to secondary status.  The Court applies the law governing interpretation of a contract to conclude that the property settlement agreement entered between the parties had the effect of wiping out an obligation previously imposed upon Robert pursuant to court order.  I find this conclusion wrong.

¶63   According to § 40-4-121(9)(b), MCA, a temporary order of maintenance or support "terminates upon order of the court or when the petition is voluntarily dismissed and, in the case of a temporary . . . support order, upon entry of the decree of dissolution . . . ."  The District Court entered an order of temporary maintenance and support, and specifically stated that the order would remain in effect until the entry of a final decree.  Under the statute noted above, such an order continues in effect until further order of the court by decree or otherwise, unless the petition is first voluntarily dismissed, which did not occur here.

¶64   It is important to note that the property settlement agreement incorporated into the court's Final Decree did not specify that, by virtue of the general release language, the delinquent support and maintenance obligations would be eliminated.  When it approved the final property settlement agreement, the District Court found that the provisions of the document were "fair and equitable."  It is clear from the court's Findings of Fact and Conclusions of Law at issue here that the court did not contemplate in finding the document "fair and equitable" that its Order of temporary support would be wiped out by the general release language contained in that document.  When it became apparent that Robert gave an

23

interpretation to the Decree that the court did not intend, the court interpreted the Decree so as to reinforce its earlier Order of support and maintenance.  This the court is clearly permitted to do.

¶65     In *In re Marriage of Cannon* (1985), 215 Mont. 272, 697 P.2d 901, we held that a district court has the authority to amend its judgment to reflect what was actually decided, and to grant the relief originally intended.  The court cannot correct judicial errors in this fashion, or alter the substantive rights of the parties; it can exercise such authority only to express what the court actually decided.  *Cannon*, 215 Mont. at 274, 697 P.2d at 902. Although not framed in terms of an amended judgment, the court's Order on appeal clarifies the intent of the court in approving the settlement agreement of the parties:  the court did not intend to release Robert from its earlier Order requiring him to pay support and maintenance until the entry of the Final Decree.

¶66     I believe the Court has applied an erroneous standard of review to this issue.  The question should not be one of interpretation of contract, but rather of whether the District Court abused its discretion in interpreting its own Order and Decree as intended.  I would conclude there was no abuse of discretion, and would affirm the District Court's decision that Brenda was entitled to receive the support and maintenance payments that were the subject of a pre-dissolution court Order.   I therefore dissent.


                                                    /S/ PATRICIA O. COTTER


Justice James C. Nelson joins in the concurrence and dissent of Justice Patricia O. Cotter.

24

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶67     I concur in the Court's opinion except as to issue 4, which is correctly stated as whether the District Court erred in subjecting Robert's salary to automatic wage withholding in order to satisfy his maintenance obligation.  I dissent from the Court's opinion on that issue in its entirety, and would reverse the District Court.

¶68     The Court's quote from the District Court's order on this issue is correct; the trial court ordered that Robert's "present maintenance obligations should be paid via wage withholding order."  Sadly, very little of the Court's subsequent discussion of the wage withholding issue bears any relationship to the case before us.

¶69     In ¶ 47, the Court properly notes that the trial court did not cite specific authority for its wage withholding decision.  While correct, the Court's statement is irrelevant because no requirement exists that a trial court do so.

¶70     The remainder of ¶ 47 and subsequent paragraphs--upon which the Court bases its decision that the District Court did not err in this regard--are laced with error.  Rather than address the issue as presented to us by both parties to this appeal, the Court at ¶ 47 "discovers" § 40-4-207, MCA, and holds--on that basis--that the District Court did not err. The problem with this approach is that the Court has done extra work on Brenda's behalf by locating this statute and premising its decision thereon.  Neither party raises this statute for the Court's consideration; nor did Brenda raise it in the trial court.  Indeed, the District Court did not require Robert to assign his income under § 40-4-207, MCA.  The trial court required wage withholding and, under any rational reading of the statute related thereto, the trial court

clearly erred in doing so.

¶71 The Court never addresses the arguments and authorities Robert presents. Instead, it *sua sponte* introduces § 40-4-207, MCA, into this appeal, apparently because it does not like the result which would be necessary if it relied on the parties' arguments. In taking this approach, I submit that the Court has become an advocate for Brenda, and has violated Robert's due process rights.

¶72 The Court makes additional objectionable statements in ¶ 48. It states that Robert's repeated failure to pay maintenance "is proper grounds for an order requiring him to assign wages under § 40-4-207, MCA." This may be true, but the District Court clearly did not require the "assignment" of Robert's wages pursuant to the statute; it clearly did subject Robert's income to "wage withholding." The two are not the same, and the effect of the Court's decision here is to retry the case, reformulate the District Court's decision-- notwithstanding its correct statement of the issue as relating to "wage withholding"--and decide on its own that § 40-4-207, MCA, applies in this case.

¶73 The Court also states that the trial court "had the power" to require a wage assignment by Robert. True again; but the trial court did not do so.

¶74 I dissent from the Court's decision, which permits Brenda to prevail without ever addressing the actual basis of Robert's appeal on this issue. If this is to be this Court's practice on a "when we feel like it," "hit or miss," "because we can" basis, it does an enormous disservice to particular parties in certain--but only a few--cases. If this is to be the Court's general practice in deciding cases on appeal, we will be taking cases from parties and trial courts generally and doing our own research--whether or not the theory is presented on appeal--to reach results which are more to the Court's liking. I will not be part of it.

/S/ KARLA M. GRAY